BLUE CROSS OF NORTHWEST OHIO, APPELLEE, *v.* JUMP, SUPT. OF INSURANCE, APPELLANT.

[Cite as Blue Cross v. Jump (1980), 61 Ohio St. 2d 246.]

(No. 79-440—Decided February 20, 1980.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach, Mr. James P. Kennedy* and *Mr. Michael J. Canter,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. W. Sean Kelleher,* for appellant.

WILLIAM B. BROWN, J.  In this cause, we must determine whether the trial court erred in vacating the superintendent's order; and also whether the relevant provisions of R.C. Chapter 1739 are constitutional.

## I.

The lawfulness of the trial court's vacation of the superintendent's order depends upon the construction given R.C. 1739.01(M). In relevant part, this section provides:

" 'Good faith effort' means a conscientious, vigorous, and continuing attempt by a hospital service association *through a combination of education, persuasion, and financial incentives and disincentives to control costs and to encourage member health facilities to control costs* by accomplishing the following objectives: * * * ."[2] (Emphasis added.)

The fundamental basis for the superintendent's finding that Blue Cross had not satisfied R.C. 1739.01(M), and for his decision to disapprove Blue Cross' entire proposed rate increase, is that while Blue Cross may have used education and persuasion to encourage hospitals to accomplish certain cost containment objectives, it completely failed to utilize financial incentives and disincentives.[3] The trial court ruled this

---

[2] R.C. 1739.01(M) then lists the following objectives:

"(1) Elimination of duplicative or unnecessary services and facilities;

"(2) Nonprovider participation in plan affairs;

"(3) Subscriber support of cost containment activities;

"(4) Promotion of sound management practices in member health care facilities;

"(5) Implementation of sound plan management practices;

"(6) Promotion of alternative forms of care;

"(7) Engagement in, and evaluation of, cost control experiments, including incentive reimbursement and utilization review programs;

"(8) Adoption of other cost containment policies as determined by the superintendent of insurance."

[3] R.C. 1739.051(D) authorizes the superintendent to "issue an order approving any proposed * * * rate, if he finds it to be lawful, fair and reasonable, * * * ." R.C. 1739.01(L) defines a lawful, fair and reasonable rate as one "that is in accordance with sound actuarial principles and reflects a good faith effort by a hospital service association to control costs, including both its own administrative costs and costs charged to it by health care facilities, including hospitals." The superintendent concedes that Blue Cross' proposed rate increase is in accordance with sound actuarial

reading to be "an incorrect interpretation of * * * [R.C. 1739.01(M)]," apparently believing that Blue Cross' good faith effort to use education and persuasion was sufficient to satisfy the statute.

The trial court's interpretation of R.C. 1739.01(M) is not correct. The General Assembly amended R.C. Chapter 1739[4] to require that Blue Cross make a good faith effort to control hospital costs, and made this effort a factor in rate setting, because the Blue Cross plans have the economic leverage and expertise to induce hospitals to become more cost-effective.[5] Education and persuasion of hospitals do not *induce* cost effectiveness, and therefore should not ordinarily be considered sufficient to satisfy R.C. 1739.01(M). On the other hand, the effectiveness of R.C. 1739.01(M) in controlling hospital costs depends primarily on Blue Cross' exploitation of its economic leverage over hospitals through the use of financial incentives and disincentives. Blue Cross' compliance with R.C. 1739.01(M) must thus depend primarily on its efforts in this regard.

Therefore, since there was a need for Blue Cross to control hospital costs,[6] and since Blue Cross did not exert a good faith effort to encourage its member hospitals to control costs by utilizing financial incentives and disincentives,[7] the

principles and reflects a good faith effort by Blue Cross to control its own administrative costs.

[4] Am. H.B. No. 448 (136 Ohio Laws 2546) was amended in 1976 to include R.C. 1739.01(L), 1739.01(M), and various provisions in R.C. 1739.051(D) needed to coordinate these two subsections with the rate-setting process.

[5] During the period Am. H. B. No. 448 was being considered, Blue Cross represented the largest source of hospital income in Ohio. Proposed Regulations Regarding the Practices of Blue Cross Plans in Ohio, Ohio Department of Insurance, May 29, 1974, at page 7. It is also clear that the Blue Cross plans were selected for special legislation because of this economic leverage over hospitals. See Corn & Shkurti, Insurance Regulations to Control the Rising Cost of Health Care: Ohio's New Blue Cross Law, 663 Ins. L.J. 193, 196-205 (1978). See, also, *Blue Cross Hospital Plan* v. *Jump* (1975), 44 Ohio St. 2d 78, 81-82 (Celebrezze, J:, dissenting).

[6] The record demonstrates a need to control costs in Blue Cross' area. The trial court's contrary findings are incorrect, especially in light of the limitations placed upon its review of administrative findings by R.C. 119.12. See *Henry's Cafe* v. *Board of Liquor Control* (1959), 170 Ohio St. 233, 235-236 (interpreting *Andrews* v. *Board of Liquor Control* [1955], 164 Ohio St. 275).

[7] The trial court erred under R.C. 119.12 in questioning the superintendent's findings for reason that these findings focused primarily, though not exclusively, on

superintendent could lawfully determine that Blue Cross failed to satisfy R.C. 1739.01(M). Thus, the trial court erred in vacating the superintendent's order.

## II.

Blue Cross also asserts that the Court of Appeals erred in determining that R.C. 1739.01(M) and Paragraph (F) of Rule 3901-1-28[8] are not unconstitutionally vague.

The Court of Appeals' determination is correct. R.C. 1739.01(M) and Paragraph (F) of Rule 3901-1-28 consist of words and phrases familiar both to Blue Cross and to the superintendent. Moreover, through intelligible guidelines, these provisions together detail types of behavior expected of Blue Cross. Finally, R.C. 1739.01(M) and Paragraph (F) of Rule 3901-1-28 are not impermissibly vague merely because they require that the superintendent condition his determination on Blue Cross' good faith compliance with these provisions. As the Court of Appeals concluded, " * * * there is certainly no dearth of case law on the matter [of good faith], and one must assume that duly appointed administrators will allow common sense to prevail."

## III.

Blue Cross next argues that the discretion given the superintendent to determine whether Blue Cross has exerted

---

the seven-month period between Blue Cross' rate hearings of February 1977, and the instant hearings. This focus did not render the superintendent's findings "[un]supported by reliable, probative, and substantial evidence." Moveover, this focus is "in accordance with law" because R.C. 1739.01(M) refers to a "conscientious, vigorous, and *continuing* attempt * * * to encourage member health care facilities to control costs * * * ." (Emphasis added.) Finally, R.C. 1739.051(D) allocates to Blue Cross the burden of proof on this issue since it provides that "[a]t every public hearing, a *hospital service association must show* by reliable, probative, and substantial evidence that * * * [it] is exerting a good faith effort to control costs." (Emphasis added.)

[8] Ohio Adm. Code 3901-1-28, effective August 19, 1976, recodifying Department of Insurance Rule IN-1739-02 (superceding Emergency Rule IN-1739-01) was promulgated under authority granted to the superintendent by R.C. 1739.051(D) to "develop rules and reporting requirements to indicate activities necessary to establish a good faith effort to control costs." Paragraph (F) of Rule 3901-1-28 repeats the cost containment objectives listed in R.C. 1739.01 (M) and, with respect to each objective, describes activities and programs toward which Blue Cross' good faith effort to control costs should be directed. See fn. 2.

a good faith effort to control hospital costs is an unlawful delegation of legislative authority.

This argument is without merit because the above determination merely executes R.C. 1739.051(D) and 1739.01(M). First, R.C. 1739.01(M) fixes the factors that the superintendent must consider both in rule making and in adjudication. Second, R.C. 1739.051(D) details mandatory procedures applicable to adjudication. Third, R.C. 1739.051(D) also provides for judicial review under R.C. 119.12. Finally, Paragraph (F) of Rule 3901-1-28, which assists the superintendent in making this determination, was promulgated under the authority of R.C. 1739.051(D). Accord *Strain* v. *Southerton* (1947), 148 Ohio St. 153. See *Belden* v. *Union Cent. Ins. Co.* (1944), 143 Ohio St. 329, paragraph three of the syllabus.

## IV.

Blue Cross finally argues that the discretion given the superintendent to partially approve a proposed rate request is an unlawful delegation of legislative authority. Blue Cross' specific objection is that, as is true, neither R.C. 1739.051(D) nor Paragraph (F) of Rule 3901-1-28 *expressly* guides the superintendent in making this apportionment.[9]

We hold that this lack of express guidance does not invalidate these provisions. When the General Assembly delegates power to an administrative official, it must provide standards insofar as it is possible to do so. See *Coady* v. *Leonard* (1937), 132 Ohio St. 329, 332. In the instant cause, however, Blue Cross has not suggested, nor does the record disclose, any standards which the superintendent could possibly employ to determine the portion of a rate request to approve, if he finds Blue Cross not in complete compliance with the cost containment provisions. Indeed, given the

---

[9] If the superintendent determines that Blue Cross has not completely "show[n] * * * that * * * [it] is exerting a good faith effort to control costs," R.C. 1739.051(D) gives him the discretion to approve only "that portion of a proposed * * * rate [increase, if any] which he [nevertheless] finds to be lawful, fair and reasonable." The terms of Paragraph (F) of Rule 3901-1-28 neither limit nor expand this discretion.

economic premises of the cost containment provisions,[10] it is unlikely that the General Assembly could draft standards limiting the superintendent's discretion in a manner satisfactory to Blue Cross *without* undermining the effectiveness of these provisions.

The absence of specific standards in a law conferring authority on an administrative official is not necessarily unlawful. In *Matz* v. *J. L. Curtis Cartage Co.* (1937), 132 Ohio St. 271, paragraph seven of the syllabus, this court held:

"As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations."[11]

With respect to the superintendent's discretion to partially approve a proposed rate increase, the General Assembly has made the policy decision that "it * * * [would be] impossible or impracticable to provide * * * [specific] standards, and [that] to do so would defeat the legislative object sought to be accomplished * * * ." Nothing in the record, or in the nature of the problem, suggests that this decision is unreasonable. Therefore, we hold that R.C. 1739.051(D) and Paragraph (F) of Rule 3901-1-28 are constitutional, notwithstanding the discretion given the superintendent to approve a proposed rate increase or portion thereof.

---

[10] The General Assembly amended R.C. Chapter 1739 to include the cost containment provisions to exploit Blue Cross' economic leverage over hospitals. It decided to monitor Blue Cross' good faith efforts, rather than to impose mandatory programs, in order to encourage innovation, to exploit Blue Cross' expertise, and perhaps to avoid the pitfalls of more extensive regulation. It chose to monitor Blue Cross' good faith efforts as part of the rate-setting process in order to exploit fully the Department of Insurance's economic leverage over the Blue Cross plans. See, generally, Corn & Shkurti, fn. 5, *supra*.

[11] See, also, *Weber* v. *Board of Health* (1947), 148 Ohio St. 389, paragraph two of the syllabus; *State* v. *Switzer* (1970), 22 Ohio St. 2d 47, 50; and *State* v. *Schreckengost* (1972), 30 Ohio St. 2d 30, 32-33.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., SWEENEY, LOCHER and HOLMES, JJ., concur.

HERBERT and P. BROWN. JJ., dissent.

PAUL W. BROWN, J., dissenting. Where a burden of proof is imposed upon a party such as that imposed upon Blue Cross and other hospital service associations under this statute, a definitive, prospective and understandable statement of what is to be proven must be fairly discoverable from the terms of the legislation or from rules provided pursuant to a lawful delegation of that power to the administrative agency. To that end the delegation must be rationally circumscribed and rules designed to implement the delegation must directly relate to legitimate regulatory goals of the agency.

I perceive that the incorporation of "good faith effort" cost containment goals into the rate-making function of the Department of Insurance represents a standard so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. I conclude that the delegation violates fundamental notions of due process and that the statutory scheme is to such extent unconstitutional.

HERBERT, J., concurs in the foregoing dissenting opinion.