186

DUFF TRUCK LINE, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Duff Truck Line v. Pub. Util. Comm. (1976), 46 Ohio St. 2d 186.]

(No. 75-949—Decided May 12, 1976.)

*Messrs. Stiverson & Alden* and *Mr. James R. Stiverson,* for appellant.

*Mr. William J. Brown*, attorney general, *Mr. Charles S. Rawlings* and *Mr. Samuel C. Randazzo*, for appellee.

*Per Curiam.* Appellant, Duff Truck Line, Inc., contends that (1) a tariff complaint is not the vehicle for interpretation by the commission of operating authority; and (2) the commission has a "mandatory burden to promulgate rules and regulations governing tacking, cross-hauling, and interlining."

The court in the case of *E. A. Schlairet Transfer Co.* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 554, 190 N. E. 2d 910, had before it an order of the commission cancelling and rejecting a tariff providing a joint rate between different carriers, regular-route motor freight carriers and irregular-route motor freight carriers. In that case the commission, in its opinion and order rejecting the tariff, stated:

"If * * * by virtue of filing a tariff authorizing joint rates with an irregular route carrier, a regular route carrier is suddenly to be allowed to interchange freight with an irregular route carrier, at any point or terminus of the regular route where the irregular route carrier has base area authority, it is obvious that suddenly and by virtue only of the filing of such a tariff providing for joint rate, the regular route carrier will be able to 'reach' and to serve many points in the state of Ohio for which he has never shown the existence of a public need * * * and for which, even if a need were established or assumed, other existing carriers were given no opportunity to improve service."

The issues before the court in *Schlairet*, as stated in the opinion, at page 555, were: "(1) Did the commission have the power and authority to entertain and reject the proposed joint rates? (2) If so, was the order of the commission in such respect unreasonable or unlawful?"

Observing that the " * * * general scope of the commission's powers with respect to motor transportation companies is outlined in Section 4921.04, Revised Code, and

embraces supervision and regulation, the fixing and altering of rates, and the regulation of services to be performed," the court concluded that "the commission had jurisdiction * * * to entertain the proceedings."

Reviewing the language of the commission's opinion and order quoted above, the court concluded, at page 557, that the order of the commission was "based upon tenable and persuasive considerations" and that it could "not be denoted as unreasonable or unlawful."

It is evident that the commission, in the *Schlairet* case, in determining the validity of the tariff at issue there, considered the operating authority of the motor carrier. Thus, the underlying principle of the *Schlairet* holding is that a tariff may not be used as a means to expand operating authority. While there may be instances where a tariff complaint would not be an appropriate vehicle for interpretation of operating authority, the extent of authorized operating authority is relevant to an inquiry concerning validity of a tariff in any case where operations under a tariff would be expanded beyond authority granted by the commission.

Following *Schlairet*, this court concludes that the commission was authorized to consider the operating authority of appellant incident to the inquiry conducted pursuant to the tariff complaint.

Appellant's second contention, that the commission has a mandatory burden to make rules and regulations governing tacking, cross-hauling and interlining, is not well taken. The commission, as appellant states, possesses statutory authority to make such rules. That authority, however, is discretionary as was indicated in paragraph four of the syllabus of *Braddock Motor Freight* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 203, 188 N. E. 2d 162, which reads, in part:

"Under Sections 4921.04 and 4921.07, Revised Code, the Public Utilities Commission may adopt regulations to regulate motor transportation companies and, in doing so, may go beyond the bare statutory framework of Chapter 4921, Revised Code. * * *"

The decision whether to proceed by rule or adjudication generally is for an administrative agency in the first instance, as " * * * the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *Securities & Exchange Comm.* v. *Chenery Corp.* (1947), 332 U. S. 194, 203; *National Labor Relations Board* v. *Bell Aerospace Co.* (1974), 416 U. S. 267.

The closing remarks of Judge Zimmerman in the opinion in *Schlairet* provide as fitting a conclusion for this appeal as they did for that case:

"It is our conclusion that the order of the commission herein is based upon tenable and persuasive considerations, and that it may not be denoted as unreasonable or unlawful. The commission has the function of supervising and regulating motor transportation companies under the authority conferred upon it by the General Assembly, and we think that it has performed that function here within permissible limits. Of course, this court will not substitute its judgment for that of the commission in matters over which the commission has authority and control."

The order of the commission is affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

CELEBREZZE, J., concurring. I write separately only to emphasize what, in my view, the majority opinion, in which I join, concludes by implication. In *E. A. Schlairet Transfer Co.* v. *Pub. Util Comm.* (1963), 174 Ohio St. 554, the court affirmed an order of the Public Utilities Commission rejecting and cancelling proposed joint rates between regular route motor freight carriers and irregular route motor freight carriers. The rationale asserted by the commission in support of its decision in *Schlairet* was that a distinction exists between regular route and irregular route certificate authority.

Judge Zimmerman, writing for the court in *Schlairet*, stated:

"In its opinion, the commission defines a 'regular route carrier' as a motor transportation company operating its vehicles over specified routes between fixed termini and on a fixed schedule in conformity with the specifications of its certificate of public convenience and necessity, and an 'irregular route carrier' is defined as a motor transportation company operating its vehicles on call over any route of its selection from or to a point or base territory as specified in its certificate of convenience and necessity. It will be observed that the operations of these two classes of carriers are quite different."

The court, in *Schlairet*, clearly indicated that the authority granted by irregular route certificate is different from authority granted by regular route certificate, as the two certificates serve different purposes. This court recently reaffirmed this distinction in *Sewell Motor Express, Inc.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 98, 100, albeit again by implication.

Based upon *Schlairet*, I conclude that the transportation of property in intrastate commerce from a point of origin to a point of destination is a through movement, which cannot be accomplished under Ohio law by the combination of one or more irregular route authorities with one or more regular route authorities, or with another irregular route authority. Otherwise, a carrier would be able to expand its business without first demonstrating the public convenience and necessity required by R. C. 4921.10.

W. BROWN and P. BROWN, JJ., concur in the foregoing concurring opinion.