256

BLUE CROSS OF NORTHEAST OHIO, APPELLEE, *v.*
RATCHFORD, SUPT., APPELLANT.

(No. 80-243—Decided December 30, 1980.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach, Mr. James P. Kennedy* and *Mr. Michael J. Canter,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. W. Sean Kelleher,* for appellant.

CELEBREZZE, C. J. Pursuant to R. C. 1739.051, a hospital service association, such as Blue Cross, can not adjust premium rates unless the Superintendent of Insurance finds that the proposed rates are "lawful, fair and reasonable."

R. C. 1739.01(L) defines a lawful, fair and reasonable rate as one "that is in accordance with sound actuarial principles and reflects a good faith effort***to control costs***."

R. C. 1739.01(M) states:

" 'Good faith effort' means a conscientious, vigorous, and continuing attempt by a hospital service association through a combination of education, persuasion, and financial incentives and disincentives to control costs and to encourage member health care facilities to control costs by accomplishing the following objectives:

"(1) Elimination of duplicative or unnecessary services and facilities;

"(2) Nonprovider participation in plan affairs;

"(3) Subscriber support of cost containment activities;

"(4) Promotion of sound management practices in member health care facilities;

"(5) Implementation of sound plan management practices;

"(6) Promotion of alternative forms of care;

"(7) Engagement in, and evaluation of, cost control experiments, including incentive reimbursement and utilization review programs;

"(8) Adoption of other cost containment policies as determined by the superintendent of insurance."

Pursuant to R. C. 1739.051(D), the Superintendent has promulgated Ohio Adm. Code 3901-1-28(F), which further defines good faith effort, stating in part:

"***the Superintendent shall not approve a contract, amendment, formula or rate unless the Plan can demonstrate a good faith effort to accomplish the following objectives:

"(1) Elimination of duplicative or unnecessary services and facilities***.

"(2) Nonprovider participation in Plan affairs***.

"(3) Subscriber support of cost containment activities***.

"***

"(5) Implementation of sound Plan management practices***.

"(6) Promotion of alternative forms of care by making a good faith effort to have health care facilities develop alternatives to inpatient care such as outpatient hospital services, ambulatory health facilities as defined in Section 1739.01(K) of the Ohio Revised Code, home health care services and skilled nursing facility services.

"(7) Engagement in the evaluation of cost control experiments, including incentive reimbursement and utilization review programs. Such activities shall include, but need not be limited to experimentation by the Plan and member health care facilities with alternative forms of care, and participation by the Plan and member health care facilities in periodic evaluations of cost control activities."

The basis of the decisions of the courts below was the Court of Appeals' decision in *Blue Cross of Northwest Ohio, supra.* This court reversed that decision in *Blue Cross* v. *Jump* (1980), 61 Ohio St. 2d 246.

In the *Jump* case, the Superintendent totally denied a proposed increase on group contracts, finding that Blue Cross of Northwest Ohio had completely failed to use financial incentives and disincentives, and as a consequence that the proposed increase was not lawful, fair and reasonable.

In reversing the Court of Appeals, this court held that it was lawful for the Superintendent to determine that Blue Cross had failed to make a good faith effort to contain costs where, after education and persuasion had failed, Blue Cross had not attempted to use financial incentives and disincentives. We also held that it is not unconstitutional for the General Assembly to provide the Superintendent with the authority to deny rate increases on the basis of his determina-

tion of whether a good faith effort has been made to contain costs.

In the case at bar, the Superintendent granted Blue Cross a partial increase based on a finding that Blue Cross had not made a total good faith effort to contain costs. In *Jump,* this court indicated that the delegation to the Superintendent in R. C. 1739.051 of the power to grant partial increases based on a finding of partial good faith did not involve an unlawful delegation of authority. However, the facts of that case did not present that issue to this court.

Although the General Assembly is precluded from delegating its legislative function, this court has consistently recognized that the General Assembly can delegate discretionary functions to administrative bodies or officers so that they can apply the law to various sets of facts or circumstances. *State* v. *Switzer* (1970), 22 Ohio St. 2d 47; *Weber* v. *Bd. of Health* (1947), 148 Ohio St. 389; *Matz* v. *J. L. Curtis Cartage Co.* (1937), 132 Ohio St. 271; *State* v. *Messenger* (1900), 63 Ohio St. 398.

In the past, this court has stated that it is necessary that the General Assembly, in delegating authority, define the policy underlying the delegating legislation and provide standards and rules for the use of the delegated power. *Carney* v. *Bd. of Tax Appeals* (1959), 169 Ohio St. 445. The court has also carved out an exception in certain cases. As stated in the seventh paragraph of the syllabus of *Matz, supra:*

"As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations."

This holding in *Matz* has been followed by this court in numerous cases, including *Jump.*

This court recognized in those cases that it was necessary for the General Assembly to place boundaries on delegated

discretion so that the use of such discretion did not involve policy decisions. It also recognized that it is not always practical, due to the need for flexibility in using discretion, to delineate specific standards.

A number of modern-day courts have indicated that specific guidelines are unnecessary. They have held that in most cases there is not a delegation of legislative power if the delegating legislation provides a general statement of policy, together with a right to judicial review, of any administrative action taken. See *Atlantis I Condominium Assn.* v. *Bryson* (Del. 1979), 403 A. 2d 711; *Bd. of Supervisors* v. *Dept. of Revenue* (Iowa 1978), 263 N. W. 2d 227; *Richfield* v. *Local No. 1215, Internat. Assn. of Fire Fighters* (Minn. 1979), 276 N. W. 2d 42; *Anderson* v. *Peden* (1978), 284 Ore. 313, 587 P. 2d 59; *State* v. *Crown Zellerback Corp.* (1979), 92 Wash. 2d 894, 602 P. 2d 1172; *Watchmaking Examining Bd.* v. *Husar* (1971), 49 Wis. 2d 526, 182 N. W. 2d 257.

We are not prepared at this point to rely totally upon procedural safeguards. Our past requirement of standards, although perhaps too rigidly stated, has protected private rights both in the clarity with which it defined the boundaries of discretion and in the notice which it has given private parties of what is required of them. As a consequence, standards, where practical, should be established by the General Assembly.

We hold that a statute does not unconstitutionally delegate legislative power if it establishes, through legislative policy and such standards as are practical, an intelligible principle to which the administrative officer or body must conform and further establishes a procedure whereby exercise of the discretion can be reviewed effectively. Ordinarily, the establishment of standards can be left to the administrative body or officer if it is reasonable for the General Assembly to defer to the officer's or body's expertise.

The policy behind the rate review power delegated the Superintendent in R. C. Chapter 1739 is clearly the containment of the soaring costs of medical care. Cost containment through rate review clearly requires flexibility. The General Assembly has provided some guidance in its definition of good faith in R. C. 1739.01 (M) and has further required the promul-

gation of rules by the Superintendent in R. C. 1739.051 (D). Further guidance would be impractical. Judicial review is available and, due to the policy and statutory guidance, such review can effectively assess the reasonableness of the Superintendent's actions in granting partial increases. As a consequence, the delegation to the Superintendent of the authority to partially deny rate increases on the basis of a finding of a partial good faith effort to contain costs is not an unconstitutional delegation of legislative power.

Separate and distinct from the issue of whether R. C. Chapter 1739 constitutionally delegates power to the Superintendent is the question of whether his order in the case at bar is lawful.

The hearing officer's report, which was adopted by the Superintendent, stated that Blue Cross could only show a total good faith effort (which is necessary to obtain approval of the total increase) if it presented evidence that "every effort possible has been made to adopt and implement a new contract." The report suggested that a new contract should provide for "(1) prospectively negotiated reimbursement which rewards good management and penalizes poor management (financial incentives and disincentives); (2) required effective utilization review in each member health care facility, which is carefully monitored by BCNO; (3) specific recognition of cost containment responsibilities, including alternate forms of care and financial incentives and disincentives to maximize their appropriate use; and (4) a 'hold harmless' clause."

Appellee argues that the Superintendent, in issuing this order, has promulgated a new rule by adjudication rather than by rule-making, in violation of its due process rights and R. C. 1739.051(D).

In *Securities & Exchange Comm.* v. *Chenery* (1947), 332 U. S. 194, the United States Supreme Court discussed the adjudicative role of administrative agencies. The court stated, at page 202, that rules should be used as much as possible, but the court also stated:

"***problems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. Or the agency may not have had sufficient experience with a

particular problem to warrant rigidifying its tentative judgment into a hard and fast rule. Or the problem may be so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. In those situations, the agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *Id.,* at pages 202-203.

This court recognized the applicability of that decision in Ohio in *Duff Truck Line* v. *Pub. Util. Comm.* (1976), 46 Ohio St. 2d 186. See, also, *Cleveland Freight Lines* v. *Pub. Util. Comm.* (1980), 62 Ohio St. 2d 50.

The case at bar differs from *Duff Truck Line* in that R. C. 1739.051(D) imposes a mandatory duty on the Superintendent to make rules regarding good faith. The Superintendent has made such rules. Clearly, the General Assembly was concerned with the amount of notice that would be given to hospital service associations. However, at some point the adjudicative process must still be available to deal with the wide variety of factual situations which will arise. As in *Chenery* and *Duff Truck Line,* the decision as to whether to proceed by rule must be left largely to the discretion of the Superintendent. He must provide as much specificity as is reasonably possible, but he is not precluded from dealing with differing fact situations. If his decision to use the adjudicative process is reasonable, that decision will not ordinarily be unconstitutional or violative of R. C. Chapter 1739.

The regulations promulgated by the Superintendent, in conjunction with R. C. Chapter 1739, notify hospital service associations of the areas in which they are required to show a good faith effort. The Superintendent's ruling that a total good faith effort is shown only by the making of every effort possible to negotiate a new contract refers to the type of proof required to show a good faith effort. Since the type of proof required can vary from case to case, it was reasonable, and thus lawful, for the Superintendent to leave such a decision to the adjudicative process.

Appellee contends, however, that the Superintendent's decision applies a new standard retroactively in violation of its due process rights.

In *Chenery,* the court stated, at pages 203-204:

"***Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency. But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law.***

"***If that is true, the argument of retroactivity becomes nothing more than a claim that the Commission lacks power to enforce the standards of the Act in this proceeding. Such a claim deserves rejection."

In the case at bar the Superintendent merely applied the enumerated standards of good faith to the facts before him. His decision to require a showing of every effort possible is not unlawfully retroactive. He was merely enforcing the standards of R. C. Chapter 1739 and Ohio Adm. Code 3901-1-28(F).

Appellee also contends that the decision regarding the need for a new contract was arbitrary and thus a violation of its due process rights. The touchstone of the Due Process Clause of the Fourteenth Amendment and the equivalent guarantees afforded in Sections 1, 16, and 19 of Article I of the Ohio Constitution is the protection of private parties from arbitrary actions by the state. *Wolff* v. *McDonnell* (1974), 418 U. S. 539.

In the case at bar, the hearing officer found that Blue Cross had not made a good faith effort to negotiate with some individual hospitals after an initial inquiry with all the hospitals regarding a new contract. Further, under the old contract Blue Cross, according to the hearing officer, had not fully complied in promoting the use of alternative procedures even though some financial incentives and disincentives may have been used. As a consequence, it was reasonable for the Superintendent, in this factual situation, to require appellee to show that every effort had been made to agree to a new contract.

Finally, appellee argues that the Superintendent failed to

provide a sufficient factual basis for his order that only 80 percent of the proposed increase be granted. Appellee contends that because a factual basis was not provided, the order is either an abuse of discretion or violative of its due process rights.

Ordinarily, a basis must be given for administrative decisions. This is necessary so that upon review a court can determine if the exercise of discretion is unlawful or unreasonable.

In the case at bar the hearing officer found that Blue Cross, in failing to show that every effort possible had been made to adopt a new contract, had substantially complied with Ohio Adm. Code 3901-1-28(F)(6) and had only partially complied with Ohio Adm. Code 3901-1-28(F)(7). Thus there was a substantial failure to comply with one of the seven elements of a good faith effort enumerated in Ohio Adm. Code 3901-1-28 (F) and a partial failure to comply with another. In view of this failure to comply, the denial of 20 percent of the proposed increase is not unreasonable or arbitrary; it clearly is within the cost containment policy of R. C. Chapter 1739.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY, LOCHER, HOLMES and DOWD, JJ., concur.

PAUL W. BROWN, J., dissents for the reasons stated in his dissenting opinion in *Blue Cross* v. *Jump* (1980), 61 Ohio St. 2d 246, at page 253.