Dressler Coal Corporation, Appellee and Cross-Appellant, v. Call, Chief, Division of Reclamation, Appellant and Cross-Appellee.

(Nos. 81AP-320, 321 and 322—Decided November 17, 1981.)

Mr. Richard B. Kay, Messrs. Peabody, Rivlin, Lambert & Myers, Mr. Jeremiah D. Lambert and Mr. Michael W. Beasley, for appellee and cross-appellant.

Mr. William J. Brown, attorney general, Mr. David E. Northrop and Mr. Dominic J. Hanket, for appellant and cross-appellee.

McCormac, J. In 1973, Dressler Coal Corporation applied to the Division of Reclamation for a license to strip mine and reclaim a 23.8 acre parcel of land in Muskingum County. As required by R.C. 1513.07, the application included a plan for mining and reclamation describing the grading and revegetation plan to reclaim the mined land. The plan was approved and a license to mine and reclaim the parcel was issued by the chief of the division.

After mining and reclaiming the parcel, Dressler made application on three different occasions to the Division of Reclamation for approval of its reclamation and release of the bond of $22,800 which was required to insure accomplishment of adequate reclamation. All three requests for final approval and release of the bond were disapproved by the chief. Appeals were taken to the Reclamation Board of Review which, on each occasion, unanimously affirmed the chief's refusal to release the bond. The disapprovals were based upon factual findings that Dressler had failed to

reclaim the parcel in accordance with its approved plan of reclamation and that there was substantial erosion on the parcel.

The three decisions of the Reclamation Board of Review affirming the denial of the release of Dressler's bond were appealed to the Franklin County Court of Common Pleas where they were consolidated for hearing. The common pleas court reversed the decisions of the Reclamation Board of Review, finding them to be unlawful and unreasonable and ordered the Chief of the Division of Reclamation to release the bond to Dressler.

The Chief of the Division of Reclamation has appealed, asserting that the common pleas court erred in ordering him to approve the reclamation of the Dressler Coal Corporation and to release the reclamation bond.

There were evidentiary hearings on three occasions before the Reclamation Board of Review. At those hearings, the division established that Dressler had submitted a plan for reclamation of the mined parcel of 23.8 acres as required by R.C. 1513.07, and that its plan was approved by the Division of Reclamation. The proposed plan provided that perennial grasses would be planted "to assure complete coverage." The plan also promised reclamation which would prevent erosion. Based upon the approval of that plan, a license to mine and reclaim the parcel was issued by the chief to Dressler on June 26, 1973.

There was substantial evidence presented at each of the hearings that there were significant bare spots and erosion on the parcel despite Dressler's attempts at reclamation of the 23.8 acre parcel. Photographs were admitted into evidence, which depicted areas of erosion and poor quality of reclamation. The mine inspectors of the Division of Reclamation also testified to the use of a vegetation work sheet which they utilized to determine percentages of "bare" and "sparse" areas of the tract in order to help them determine whether the bare and sparse areas of vegetation exceeded the maximum allowable criteria, which, pending the adoption of specific rules and regulations, had been determined to be not more than one percent of bare land and not more than ten percent of sparse vegetation. Testimony was that the areas of bare and sparse vegetation far exceeded these amounts.

The board found that Dressler had failed to comply with R.C. 1513.16(B)(5) [now (B)(6)] and R.C. 1513.16(C)(3), and refused to release the reclamation bond.

R.C. Chapter 1513, entitled "Reclamation of Strip-Mined Land," sets forth a comprehensive strip mine reclamation regulatory scheme designed to assure that strip-mined land is restored and reclaimed to protect environmental quality and future usefulness of the land. R.C. 1513.02 provides that the Chief of the Division of Reclamation shall have broad authority to implement the requirements of R.C. Chapter 1513 and shall adopt, amend, and rescind rules to ensure full compliance with all of the requirements of the chapter in the interest of public health, safety and welfare. To achieve this broad statutory purpose, all strip mining is prohibited except where authorized by a license (amended in 1975 to require a permit rather than a license) issued by the chief pursuant to R.C. 1513.07. To obtain a license or permit, the miner must submit extensive information including a complete plan for mining and reclamation. The plan must include a description of the methods and practices the applicant intends to employ in strip mining to prevent, among other things, erosion. The plan must also include a description of the planning to be done for reclamation. The chief is required to disapprove any plan which does not provide for the immediate establishment of covering by grasses, legumes, or similar plants in order to prevent soil erosion.

R.C. 1513.16(C) provides:

"(C) An operator shall mine and reclaim the area of land affected in accordance with the plan for mining and reclaiming approved by the chief in the operator's application for a permit. In the process of reclamation, the operator shall:
"* * *

"(3) Plant and grow vegetative covering as required by the mining and reclamation plan approved by the chief;
* * *."

Based upon the approved plan and the promise of complete coverage of vegetation therein, the board found that Dressler did not comply with R.C. 1513.16(C)(3).

R.C. 1513.16(B)(5) [now (B)(6)] provides as follows:

"(B) While mining and reclaiming, an operator shall:
"* * *

"(6) Prevent * · * * substantial erosion, * * *."

The board found based upon the evidence that there was substantial erosion which had not been eliminated and that Dressler had not complied with R.C. 1513.16(B)(5).

R.C. 1513.08 provides for release of the miner's bond upon approval by the chief of successful reclamation. If reclamation is inadequate, the chief may order a forfeiture of the bond, obtain the bond funds and perform the reclamation himself. In this case, no forfeiture has occurred, but, on three occasions, the chief has disapproved the reclamation and refused to release the bond to Dressler.

In summary, there was substantial evidence presented on each occasion to the Reclamation Board of Review that the Chief of the Division of Reclamation refused to release Dressler's bond because the parcel had not been reclaimed in accordance with the approved plan, there not being complete coverage of vegetation, and that there was substantial erosion on the tract after reclamation.

R.C. 1513.14 provides for appeal of the order of the Reclamation Board of Review to the Franklin County Court of Common Pleas, which was done by Dressler in each instance. R.C. 1513.14 provides as follows:

"If the court finds that the order of the board appealed from was lawful and reasonable, it shall affirm the order. If the court finds that the order was unreasonable or unlawful, it shall vacate such order and make the order which it finds the board should have made. * * *."

Despite the evidence presented to the board as previously related, the Franklin County Court of Common Pleas vacated the order of the board and ordered the Chief of the Division of Reclamation to release Dressler's bond, finding that to be the order that the board . should have made.

The rationale relied upon by the common pleas court in vacating the board's order was that the inspectors of the Division of Reclamation were using a document entitled "GRASS/LEGUME PLANTING EVALUATION WORKSHEET" in determining and evaluating the amount of sparse and barren areas which existed on a particular strip mining site after attempted reclamation. The work sheet set one percent of the site area as the total maximum allowable barren area, 0.3 percent as the maximum allowable individual barren area, and ten percent as the maximum allowable total sparse area. The common pleas court found that the use of the work sheets, unsupported by rules or regulations of the division, amounted to rulemaking by adjudication which was found to be improper, and that the statutes plus the approved reclamation plan did not present a legally sufficient standard for judging replanting efforts. The trial court also found that Dressler's plan approved by the division did not contain enforceable promises as the chief had no articulated standard to approve or disapprove the plan.

The reasoning of the trial court is not supported by law and is rejected.

R.C. 1513.02 provides that the chief

shall adopt rules to administer and enforce R.C. Chapter 1513 and to implement the requirements of R.C. Chapter 1513 for the reclamation of lands affected by strip mining. The chief did adopt comprehensive regulations governing reclamation, effective May 25, 1973, shortly prior to the issuance of the license to Dressler on June 26, 1973, but litigation was commenced by several strip mine firms in the Franklin County Court of Common Pleas, and a preliminary injunction was issued against enforcement of the regulations on June 24, 1975. The preliminary injunction remained in effect until September 22, 1977, when plaintiffs voluntarily dismissed the action due to the adoption by the chief of new regulations agreeable to the coal industry on September 1, 1977. Thus, during the times when approval was sought for Dressler's reclamation, there were no rules and regulations in effect. During this period, when rules were in limbo, the chief had imposed upon his staff certain objective criteria to be employed in judging the success of reclamation, one of which was the vegetation work sheet used by the inspectors in this case.

The first issue is whether R.C. 1513.16, which requires reclamation in accordance with the approved plan submitted by the mine operator and which requires the absence of substantial erosion, was enforceable without further definition of the requirements for reclamation by rule and regulation. That question must be answered in the affirmative.

Even though R.C. 1513.02 required the chief to adopt rules and regulations to administer, enforce, and implement R.C. Chapter 1513, the absence of rules and regulations did not totally emasculate the enforcibility of R.C. Chapter 1513 during the period at issue. R.C. Chapter 1513 presents a clear statutory scheme for reclamation of strip-mined land including requirements for the plan which must be submitted by an operator to obtain a strip mining permit, which includes details for

reclamation of the area. R.C. 1513.16 requires that an operator shall prevent substantial erosion. It also requires that the operator must plant and grow vegetative covering as required by the mining and reclamation plan approved by the chief. Even absent rules and regulations more specifically defining what is substantial erosion or what is adequate vegetative covering, the statutes are enforceable as they sufficiently define the policy underlying the delegating legislation and sufficiently provide standards to guide the administrative agency in the lawful use of the delegated power, the touchstone for determining whether the statutes unconstitutionally delegate legislative power. See *Blue Cross* v. *Ratchford* (1980), 64 Ohio St. 2d 256 [18 O.O. 3d 450]. As stated in *Ratchford* at 260, "* * * a statute does not unconstitutionally delegate legislative power if it establishes, through legislative policy and such standards as are practical, an intelligible principle to which the administrative officer or body must conform and further establishes a procedure whereby exercise of the discretion can be reviewed effectively. Ordinarily, the establishment of standards can be left to the administrative body or officer if it is reasonable for the General Assembly to defer to the officer's or body's expertise."

In *Ratchford*, Blue Cross argued that the superintendent had promulgated a rule by adjudication rather than by rulemaking by leaving standards of partial good faith compliance to be determined by case by case adjudication rather than by specific rule. The Supreme Court rejected that contention, citing the case of *Securities & Exchange Comm.* v. *Chenery Corp.* (1947), 332 U.S. 194, with approval, finding that the superintendent of insurance within his discretion may choose between proceeding by a general rule or by individual *ad hoc* litigation.

In *Chenery Corp.,* the United States Supreme Court stated, at page 203, as follows:

"* * * the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency. * * *"

The United States Supreme Court held that there is a very definite place for an administrative agency to use a case by case evaluation of statutory standards, pointing out that there are circumstances which arise where an agency is justified in acting by individual order rather than by general rule. The court stated, "[t]o insist upon one form of action to the exclusion of the other is to exalt form over necessity." *Chenery Corp., supra,* at page 202. The type of circumstances which the Supreme Court found may give rise to action by individual order rather than by general rule were the following: (1) situations that could not reasonably be foreseen; (2) problems which must be solved despite the absence of a relevant general rule; (3) insufficient experience with the particular problem to warrant rigidifying a tentative judgment into a hard and fast rule; and (4) problems so specialized and varying in nature as to be impossible to capture within the boundaries of a general rule.

In this instance, there were reclamation problems which the Chief of the Division of Reclamation had to solve despite the absence of general rules and regulations during the period that his previously adopted rules and regulations had been enjoined by the common pleas court, before new rules and regulations were promulgated. During this interim period, there was a continuing need for implementation of the standards provided by R.C. Chapter 1513 for adequate reclamation of strip-mined land. The statutory standard was that the chief was not to approve reclamation if not accomplished in accordance with the submitted and approved plan of reclamation. A requirement of the plan was the prevention of erosion which probably would occur if land were barren or sparse and the corresponding duty of successful planting of vegetation. To aid in uniformly determining whether there was adequate reclamation of the strip-mined land to fulfill the needs and philosophy of R.C. Chapter 1513, objective internal criteria were developed, one of which was the work sheet utilized by the inspectors in this case to determine the percentage of barren or sparse land. The internal grading system used in this case is similar to the "point scoring system" that the superintendent of insurance used to determine the degree of good faith compliance of Blue Cross. In *Hospital Care Corp. - Canton Region* v. *Ratchford* (June 23, 1981), No. 80AP-639, unreported, we held that the use of this system did not constitute rulemaking by adjudication but, instead, represented an attempt by the superintendent to explain and mathematically illustrate the agency's decision.

The rules and regulations promulgated by the chief, which became effective on September 1, 1977, contain standards for planting and revegetation, which are very similar to those contemplated by the internal work sheets used by the inspectors.[1]

Ohio Adm. Code 1501:13-15-02 (eff. Sept. 1, 1977) was apparently adopted with approval of the operators who then voluntarily dismissed their injunction action. Although the parties agree that those rules do not apply herein, they sup-

---

[1] Division of Reclamation, Ohio Adm. Code 1501:13-15-02 (Planting and Revegetation): "* * * (D) The permanent vegetation shall be deemed to be successful if the vegetation planted in accordance with paragraph (B) of this rule has been established and maintained at a rate of at least 75 percent cover on 89 percent of the land affected and at least 30 percent cover on ten percent of the land affected. No single area with less than 30 percent cover shall exceed the lesser of 3000 square feet or 0.3 percent of the land affected."

port the contention that the standards used by the Division of Reclamation during the period when there were no regulations are consistent with statutory standards.

In summary, the *Chenery Corp.* rule as approved by the Supreme Court in *Blue Cross* v. *Ratchford,* permitted enforcement of the statutory standards of R.C. Chapter 1513 by the Chief of the Division of Reclamation during the period that there were no specific regulations in effect to solve problems involving reclamation requirements by a case by case method. The decision of the Reclamation Board of Review was neither unreasonable nor unlawful and should be affirmed.

Appellee has cross-appealed, asserting that the court of common pleas erred in denying Dressler an award of costs of the judicial and administrative proceedings below and that it, as a successful appellant before the Franklin County Court of Common Pleas, should be awarded the costs of litigation from the Chief of the Division of Reclamation or from the state of Ohio.

Appellee's cross-appeal is moot, based upon our disposition of appellant's assignment of error.

Appellee's assignment of error on cross-appeal is overruled.

Appellant's assignment of error is sustained and appellee's cross-assignment of error is overruled. The judgments of the trial court are reversed and the cases are remanded to the trial court to issue judgments affirming the decisions of the Reclamation Board of Review.

*Judgments reversed and cases remanded.*

REILLY and CELEBREZZE, JJ., concur.

CELEBREZZE, J., of the Eighth Appellate District, sitting by assignment in the Tenth Appellate District.