CITY OF INDEPENDENCE ET AL.,
APPELLANTS AND CROSS-APPELLEES,
*v.* MAYNARD, DIRECTOR, ET AL.,
APPELLEES; BOYAS ET AL., APPELLEES
AND CROSS-APPELLANTS.
(FOUR CASES.)

(Nos. 83AP-403, -404, -423 and -424 —
Decided June 6, 1985.)

APPEAL and CROSS-APPEAL:
Court of Appeals for
Franklin County.

*Thompson, Hine & Flory, William
H. Wallace, David E. Nash* and *Michael
A. Cyphert,* for city of Independence.
*Deborah J. Nicastro,* for John J.
Nicastro.
*Anthony J. Celebrezze, Jr.,* attorney

general, and *Joan M. Cummings,* for Robert H. Maynard, director, and Ohio Environmental Protection Agency.

*Mansour, Gavin, Gerlack & Manos Co., L.P.A., Michael T. Gavin* and *Eli Manos,* for Pete Boyas et al.

MOYER, J. This matter is before us on the appeal of the city of Independence, Ohio, and John J. Nicastro on behalf of the Save Our Independence Land Committee ("appellants"), from an order of the Environmental Board of Review ("board") and upon the cross-appeal of Pete Boyas, Independence Development Sanitary Landfill and Boyas Excavating, Inc. ("Boyas") from the same order of the board.

The Director of the Ohio Environmental Protection Agency ("director") issued a permit to Boyas, which was effective February 1, 1982, permitting him to install a sanitary landfill in a site in Independence, Ohio, that consisted of thirty-one acres at the northwest corridor to the Cuyahoga Valley National Recreation Area ("recreation area"). The director also approved plans to install the sanitary landfill and granted waivers of Ohio Adm. Code 3745-27-06 (I)(4) and (5). The area for which the permit was granted was a quarry in which shale mining was conducted by the Hydraulic Press Brick Company ("Hydraulic"). The pit from which the shale was taken was seventeen acres in area and two-hundred-twenty feet deep, and had an estimated life of eight-to-ten years at a loading grade of 2,750 tons per day, operating on a six-day week. The waste to be deposited in the landfill was described as municipal, industrial and commercial waste.

The director's order was appealed to the board by appellants herein. The first appeal was dismissed upon the motion of the director and Boyas when it was learned by the director that the plans and the permit would have authorized deposition of solid waste material within two hundred feet of Hemlock Creek, in violation of Ohio Adm. Code 3745-27-06 (I)(5), which requires a waiver under Ohio Adm. Code 3745-27-11.

Boyas submitted a second application, which was approved by the director and which was appealed by appellants herein. It is the appeal from the director's issuance of the second permit that is the basis of the appeal to this court. The permit site is located within the Cuyahoga River Valley, is wooded and contains a number of flora and fauna, two streams, one of which empties into the Cuyahoga River, and is surrounded by land that is used for educational, recreational, residential and commercial purposes. The closest home to the site is approximately eight hundred to one thousand feet, and the air in the neighborhood is reasonably clean and odor free.

After a hearing *de novo,* the board found that the director was not required to consider the social and economic impact of granting the permit; that the director has discretion whether to consider and evaluate separate and distinct governmental interests with respect to the property in question; that the landfill will not create a nuisance; that Ohio Adm. Code 3745-27-06(H)(2) and (3) were not violated when the director issued a permit to Boyas; and that the director's order did violate Ohio Adm. Code 3745-27-06(H)(4) because the facility will be incapable of operation in accordance with Ohio Adm. Code 3745-27-07, 3745-27-08, and 3745-27-09. The board's order on this issue is based upon its findings of fact with respect to Boyas' failure to incorporate a leachate collection system in the landfill property. The board further concluded that the requirements of Ohio Adm. Code 3745-27-06(I)(4) and (5), and 3745-27-11(F), which permit the director to grant a waiver, were "suspect" because of the inadequacy of the leachate collection system, and the board therefore did not

rule upon the propriety of the director's issuance of a waiver to Boyas; that the evidence did not establish compliance with Ohio Adm. Code 3745-31-05(A)(1), (2), (3) and (4); that the proposed landfill will prevent or interfere with the attainment or maintenance of ambient water quality standards in Hemlock Creek or the easterly and southerly tributaries of the Cuyahoga River; that the construction and operation of the landfill will be unlawful; that the discharge of other wastes from the settlement basin into the nearby waters without a valid permit and the alteration and obliteration of the existing channel of the easterly stream violate the permit provisions of Section 404(A) of the Clean Water Act, Section 1344, Title 33, United States Code; and that there was insufficient evidence to conclude that the director's action conflicted with "federal policy."

Appellants assert the following seven assignments of error in support of their appeal:

"1. The Environmental Board of Review erred in concluding that Congressional legislation and the hearing record reflected insufficient evidence to establish that the Director of Environmental Protection's final action was inconsistent with, and therefore preempted by, superior Federal law.

"2. The Environmental Board of Review erred in concluding that the Director of Environmental Protection could refuse to consider the social and economic impact of the landfill on the Cuyahoga Valley National Recreation Area and surrounding land uses and the actions of other governmental entities to preserve the Cuyahoga Valley for public park uses.

"3. The Environmental Board of Review erred in concluding, as a matter of fact and law, that the proposed landfill will not create an unlawful nuisance with respect to adjacent landowners and users of this Cuyahoga Valley National Recreation Area.

"4. The Environmental Board of Review erred in concluding that the applicant, Pete Boyas, was not barred as a matter of law by Ohio Administrative Code Section 3745-27-06(H)(2), as a prior violator of Ohio environmental laws, from being granted a permit to install with respect to the proposed landfill.

"5. The Environmental Board of Review erred in concluding, on motion, that its prior vacation of a permit to install previously granted to the applicant with respect to the same permit area and proposed use, did not bar the Director of Environmental Protection's subsequent final action as a matter of law under the doctrine of *res judicata*.

"6. The Environmental Board of Review erred in failing to conclude that the waivers granted to the applicant pursuant to Ohio Administrative Code Section 3745-27-11 were unreasonable and unlawful.

"7. The Environmental Board of Review erred in concluding that the Director of Environmental Protection's final action should be vacated in part and affirmed in part, rather than vacated in its entirety."

In support of their first assignment of error, appellants argue that, because the permit site is within the geographical boundaries of the Cuyahoga Valley National Recreation Area, it violates a purported pre-emption that the United States government has regarding the use of the land within the recreation area. There is considerable testimony and other evidence in the record regarding the effect the proposed landfill would have upon the adjacent land that would be used as a recreation area. However, although it is apparent that Congress, in adopting Sections 460ff to 460ff-5, Title 16, U.S. Code, intended to preserve the thirty-two thousand acres of land designated as the recreation area, the question is whether Congress, in fact, complied with the strict test for pre-empting land use.

In determining that issue, we consider first the legislation by which the recreation area was created by Congress. The purpose for establishment of the recreation area was to preserve and protect for public use and enjoyment the historic, scenic, natural and recreational areas of the Cuyahoga River and the adjacent lands of the Cuyahoga Valley and to provide needed recreational open space in an urban environment. (*Id.* at Section 460ff.) The legislation then refers to a boundary map, a copy of which is a part of the record before the board, and states that the Secretary of Interior may make minor revisions of the boundaries of the recreation area when necessary:

"* * * *Provided,* That with respect to the property known as the Hydraulic Brick Company located in Independence, Ohio, the Secretary shall have the first right of refusal to purchase such property for a purchase price not exceeding the fair market value of such property on the date it is offered for sale. When acquired such property shall be administered as part of the recreation area, subject to the laws and regulations applicable thereto." (*Id.* at Section 460ff-1[a].)

The Act specifically provides for the purchase or acquisition by gift of lands, improvements, waters or interests therein, a schedule by which the Secretary of Interior was to submit to Congress a plan which would indicate the lands and areas the secretary deemed essential to the protection and public enjoyment of the recreation area, the lands he had previously acquired, and an annual five-year acquisition program.

The Act also contains a reference to local zoning in the following words: "* * * In providing assistance pursuant to this subsection, the Secretary shall endeavor to obtain provisions in such zoning laws or ordinances which * * *" would have the effect of prohibiting commercial and industrial use of the real property adjacent to the recreation area and aid in preserving the character of the recreation area. (*Id.* at Section 460ff-3[f].)

Finally, Congress made it clear that it was not directing the secretary to violate the Fifth Amendment to the United States Constitution by acquiring property rights without giving reasonable compensation for such rights by authorizing the appropriation of over seventy million dollars "for the acquisition of lands and interests in lands." (*Id.* at Section 460ff-5[a].) At the time of the hearing before the board, the National Park Service had not exercised its right to purchase the permit area, even though the site had been transferred with the park service's knowledge. Furthermore, a witness representing the National Park Service testified that there are many areas within the recreation area boundaries that the park service has no intention of acquiring and that such unacquired areas would not be administered by the park service unless they were acquired. He further testified that the park service had no intention of acquiring the Hydraulic property, that the park had no use for the pit and that he would not recommend acquiring the pit.

The United States Supreme Court observed in *Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, at 634, that the court had frequently indicated that:

" '* * * Pre-emption of state law by federal statute or regulation is not favored "in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." '* * * [Citations omitted.] In cases such as this, it is necessary to look beyond general expressions of 'national policy' to specific federal statutes with which the state law is claimed to conflict. * * *"

The issue in *Montana, inter alia,* was whether a Montana severance tax

on the mining of coal on federal land violated the Supremacy Clause in view of the impact of the severance tax upon royalty payments to the federal government. While the facts in *Montana* are not similar to the facts in this case, the general test stated in *Montana* should be applied to the federal statute and the facts in this case. When that is done, we conclude that the granting of a permit by the Director of the Ohio Environmental Protection Agency to a private company, to use land within the boundaries of an area designated by Congress as a national park where the land is not owned by the federal government and the Act creating the park area does not expressly pre-empt the use of land for any purpose authorized by the state, does not violate Clause 2, Article VI, of the United States Constitution.

The cases cited by appellants in support of their argument do not require a finding that the Supremacy Clause has been violated in this case. Furthermore, a holding that a violation of the Supremacy Clause has occurred where no compensation has been paid for the land in question would violate the Fifth Amendment to the Constitution, which prohibits the taking of property without just compensation. That was not the effect of the holding in any of the cases cited by appellants. In fact, appellants have cited no express prohibition against the issuance of a permit for a landfill within the recreation area. While it is clear that the intention of Congress in establishing the recreation area was to preserve a scenic and somewhat historic condition, it is equally clear that Congress did not enact an express prohibition against state action.

Appellants have filed a supplemental brief arguing that the enactment by Congress of Public Law 98-506, effective October 19, 1984, and after this case was submitted to the court on the briefs and oral argument, specifically prohibits the operation of a solid waste disposal facility within the boundary of any unit of the National Park System.

The arguments raised in appellants' supplemental brief are not persuasive for the following reasons:

1. We are confined to the record and the transcript of the proceedings below in determining whether the order of the Environmental Board of Review is supported by reliable, substantial and probative evidence and is in accordance with law.

2. The question before the Environmental Board of Review was whether the permit to install issued by the director complied with the environmental protection laws and regulations of Ohio and, to the extent they are applicable, of the United States. Neither the director nor the board has jurisdiction to prohibit the installation of a landfill for the reason that another government agency may object to such installation. See *City of Garfield Heights* v. *Williams* (Sept. 29, 1977), Franklin App. No. 77AP-449, unreported, and *Little Miami, Inc.* v. *Williams* (Dec. 23, 1976), Franklin App. Nos. 76AP-292 and -285, unreported.

3. The question of the applicability of a federal statute to the use of land within a federal park system and the question of the cession of authority from Ohio over lands not acquired by the federal government should be resolved in a proceeding initiated by the appropriate federal agency. The first assignment of error is not well-taken and is overruled.

In support of their second assignment of error, appellants argue that the director abused his discretion when he failed to consider the social and economic impact of his granting of the permit. Appellants argue that the director should have considered such nontechnical conditions as the opinions of other agencies, interference with recreational and educational activities within the park, and the preservation of

historical sites in the recreation area. Appellants also wish the court to consider, specifically, the director's failure to follow the recommendation of the Ohio Department of Natural Resources and the master plan for the city of Independence, which recommended the phasing out of commercial and industrial uses in the Cuyahoga Valley. In disposing of the second assignment of error, we observe first that R.C. 3745.011, by which the General Assembly enunciated the specific functions of the Environmental Protection Agency, says nothing with respect to the agency's responsibility to defer to local zoning ordinances, master plans, or the social and economic impact of the establishment of a landfill in any part of this state. The direction of R.C. 3745.011 is technical in nature, in that it is the Environmental Protection Agency's responsibility to conserve, protect and enhance the air, water and other natural resources of the state, and to prevent and abate pollution of the environment.

The director has adopted a number of rules to facilitate the implementation of the environmental protection laws of Ohio. One of the rules, Ohio Adm. Code 3745-31-05, states that the director, in considering whether to issue a permit to install a solid waste disposal facility, *may* take into consideration, *inter alia,* the social and economic impact of granting or denying the permit to install.

Appellants acknowledge that the director has no direct authority over the establishment of national parks, local zoning or surface mine reclamation. This court, in *Little Miami, Inc., supra,* at 11, interpreted the predecessor to Ohio Adm. Code 3745-31-05 (EP. 30-05) in reversing an order of the Environmental Board of Review which had vacated the director's order to permit the installation of a sewage treatment facility. In our opinion, we observed that:

"* * * Moreover, the Director is required to coordinate environmental protection activities with various other agencies and to consider their plans and projects as part of a planning process. Such is a general procedure but is not a required determination each time a permit to install is issued. It remains the responsibility of local zoning officials, commissions, boards of appeals, and courts to regulate the various social and economic concerns within the jurisdiction of particular subdivisions. Determination whether or not to grant or deny a permit to install a facility is predicated upon the impact of the proposed facility on the environment or public health. Zoning and pollution control are separate and distinct governmental interests, independently enforced and administered by different governmental units. The zoning issue, in particular, is separate and apart, and not the subject of this appeal."

The opinion recognizes, at least impliedly, that the direction of Ohio Adm. Code 3745-31-05(B) is that the director is not required to, but may, take into consideration the social and economic impact of granting or denying a permit to install. Since the director is not required to consider such factors, he could not have abused his discretion, as argued by appellants, in failing to consider such issues. Furthermore, we are not convinced from our review of the record and the transcript before the board that the director failed to consider nontechnical factors in issuing the permit. There are a number of communications from the mayors of cities and villages in the area of the permit site urging him to grant the permit to alleviate a severe shortage of places to deposit waste. The director visited the site; there is testimony that the record of the public hearing was reviewed by the Chief of the Northeast District Office of the Environmental Protection Agency; and, finally, appellants were provided a *de novo* hearing by the board,

at which twenty-eight volumes of transcript were produced. There is considerable testimony regarding the social and economic impact upon the community in the permit area that purportedly will result from a granting of the permit. We find no error in the board's conclusion of law that the director is not required to consider the social and economic impact of the granting of a permit and that the director has discretion whether to consider and evaluate separate and distinct governmental interests. See *Little Miami, Inc., supra,* and *City of Garfield Heights, supra.* The second assignment of error is not well-taken and is overruled.

The question of whether a proposed landfill will create a nuisance is a question that attends virtually every request for a permit to install a landfill, because virtually every person would prefer not to live, or work or attend school near a landfill. However, every person in our society creates material waste that must be disposed of somewhere. It is in that context that the director and the Environmental Board of Review necessarily consider the issue raised by appellants' third assignment of error.

The board recognized this dilemma in its thirty-seventh finding of fact. After stating in its findings of fact that the operation of the proposed landfill may be offensive to the senses, may interfere with the comfortable enjoyment of life in adjacent property, and may affect a considerable number of persons by reason of the emission of noise from vehicles and equipment and, after concluding that the control of blowing debris is not the best available current technology and that the production of methane gas at the site could create a serious hazard if produced in sufficient volume, the board concluded upon the evidence in the director's record and at the *de novo* hearing that the landfill will not create a nuisance. The reasons the board gave were that the site is isolated from residential structures and from the areas used by visitors to the recreation area, the close proximity of the site to industrial and commercial enterprises and the board's assumption that Boyas would comply with the conditions in the permit designed to prevent a nuisance from occurring. The board's conclusions were apparently based, at least in part, upon its own view of the site. R.C. 3734.02(A) requires that the director issue licenses for solid waste facilities to assure that the facilities will not create a nuisance. Ohio Adm. Code 3745-27-01(N) defines nuisance as follows:

" 'Nuisance' means anything which is injurious to human health or offensive to the senses; interferes with the comfortable enjoyment of life or property; and affects a community, neighborhood, or any considerable number of persons (although the extent of annoyance or damage inflicted upon individual persons may be unequal)."

Our review of the transcript causes us to conclude that there is reliable, probative and substantial evidence upon which the board could conclude that the director's order would not create a nuisance, as defined in the Administrative Code and as applied by this court in *City of Garfield Heights* v. *Williams* (June 14, 1979), No. 78AP-683 to -688, unreported. *Garfield Heights, supra,* is important to this case because of the distinction that can be made between the opinion in that case and the board's conclusions of law in this case. In *Garfield Heights,* we observed that the board had considered the economic impracticality of eliminating the nuisance created by the landfill to adjacent property owners. In this case, the board concluded that Boyas' compliance with the permit will provide protection against the creation of a nuisance and that the dust, noise, odors and blowing debris are controllable and will not be injurious to human health, or offensive to the senses, nor will they interfere with the comfor-

table enjoyment of life and property, if the landfill is operated in accordance with the permit and other applicable laws and regulations. That conclusion is based upon reliable, substantial and probative evidence in the record that conflicted with some of the evidence offered by appellants. The third assignment of error is not well-taken and is overruled.

We observe at the outset of our disposition of appellants' fourth assignment of error that none of the parties has discussed the question of whether the board has the authority to adopt a rule such as Ohio Adm. Code 3745-27-06(H)(2), which on its face would prevent any operator of a solid waste facility who has previously violated a rule in even a minor way from operating any other waste facility in Ohio. We will therefore consider whether the board's order, which has the effect of finding that the director acted reasonably and lawfully in view of Ohio Adm. Code 3745-27-06(H)(2) and (3), is supported by reliable, probative and substantial evidence and is in accordance with law.

Ohio Adm. Code 3745-27-06(H)(2) provides that the director shall not approve any detail plans if the plans are submitted by a person who has previously operated or is currently operating one or more solid waste disposal facilities not in accordance with the applicable statutes and administrative rules. Subparagraph (3) requires that the person identified as the operator of a proposed solid waste disposal facility is competent and qualified to operate said facility. There is substantial evidence in the record to support the board's finding that Boyas complied with subparagraph (3). The chief of the northeast district office testified that Boyas had demonstrated the ability to operate a landfill in a competent manner. A district engineer for the northeast district office testified that he made a number of visits to the Rockside Landfill, which had previously been operated by Boyas, and that the

day-to-day operation of this landfill was reasonably well-organized, reasonably well-maintained and well-run. He also testified that there was a problem with odor, noise created by the equipment at the landfill, and some problem with blowing dust.

Appellants argue that, because we held in *City of Garfield Heights* v. *Williams, supra,* that the granting of a permit to Rockside, which was operated by Boyas, would constitute the licensing of a nuisance, the director did not have the authority to grant Boyas a permit for the site herein. In *City of Garfield Heights,* the board had found that the original Rockside site was attracting birds and vermin and was technically creating a nuisance, but that it did not constitute a nuisance under the terms of R.C. 3734.02, when the efforts of Boyas to eliminate the nuisance and the economic realities of the need for an expanded landfill site were considered.

We first observe that a rule such as that in Ohio Adm. Code 3745-27-06(H)(2), which purports to strip the director of any discretion, is suspect for the reasoning found in *Dressler Coal Corp.* v. *Call* (1981), 4 Ohio App. 3d 81, wherein we observed that there is a very definite place for an administrative agency to use a case-by-case evaluation of statutory standards, in situations where there are circumstances which arise whereby an agency is justified in acting by individual order, rather than by general rule. Citing the United States Supreme Court (*Securities & Exchange Comm.* v. *Chenery Corp.* [1947], 332 U.S. 194), we stated, in *Dressler,* at 85, that " '[t]o insist upon one form of action to the exclusion of the other is to exalt form over necessity.' "

The rule in question would appear to be an example of the antithesis of such reasoning. Both the board and this court, in *Garfield Heights,* observed that the operator (Boyas) had done everything he could to prevent and eliminate

the nuisance that his landfill apparently created. In such a case, it would appear that a mandatory rule saying, in effect, that such an operator can never operate another landfill is an example of the excesses that can be produced by administrative rule making. On the record before us, it cannot be said that the board's order affirming the director's interpretation of Ohio Adm. Code 3745-27-06(H)(2) is not supported by reliable, probative and substantial evidence and is not in accordance with law. The fourth assignment of error is not well-taken and is overruled.

Appellants' fifth assignment of error has no merit. The parties agree that the director initially issued to Boyas a permit to install and plan approval that would have authorized the deposition of solid waste into Hemlock Creek in violation of Ohio Adm. Code 3745-27-06(I)(5), as the creek was within two hundred feet of the proposed landfill site. That order was defective because it was issued without a waiver under Ohio Adm. Code 3745-27-11. When the director's order was appealed to the board and the director realized the defect in his order, he moved the board to vacate the order and it was vacated by the board.

New plans were then submitted by Boyas, which modified the design and eliminated the solid waste deposition within two hundred feet of Hemlock Creek. That proposal was approved by the director, who issued a new permit to install, a plan approval and a waiver of Ohio Adm. Code 3745-27-06(I)(4) and (5). Appellants appealed the new order and then filed a motion to dismiss with the board urging that the director's second order was barred by the doctrine of res judicata.

"*Res judicata* embraces the doctrine of collateral estoppel which holds that when an issue of fact or law is determined by a valid judgment, the determination being essential to that judgment, that determination is conclusive against a party who attempts to relitigate the issue in a subsequent action, whether that subsequent action is with the opposing party in the first action, or is with another person. * * *" *Barthany* v. *Denton* (July 9, 1981), Franklin App. No. 81AP-73, unreported.

It is important to emphasize in this case that no evidence was presented to the board and the board made no findings of fact or conclusions of law with respect to the first order which was the basis of appellants' motion to dismiss. While *res judicata* does apply to administrative hearings, it should be applied with flexibility and only where the administrative proceeding has been of a judicial nature and the parties have had an adequate opportunity to litigate the issues in the proceeding. See *Superior's Brand* v. *Lindley* (1980), 62 Ohio St. 2d 133 [16 O.O.3d 150].

In the case before us, the second permit to install was issued upon different facts than was the first permit to install. For that reason and because the parties had presented no evidence to the board when the director moved to dismiss the first appeal, the board did not err when it concluded that *res judicata* did not apply to the director's second order. In fact, if we were to adopt the reasoning argued by appellants, we would produce the anomalous result of penalizing an applicant for a new permit by holding that the director is bound by a mistake he made in issuing a previous permit to install, in a situation in which he subsequently took the initiative to correct his own error. The fifth assignment of error is overruled.

In support of their sixth assignment of error, appellants argue that the board erred when it did not rule upon the question of whether the director had properly granted waivers pursuant to Ohio Adm. Code 3745-27-06(I)(1), (4), (5) and 3745-27-11(F). The board deferred ruling upon that question because it found that it was impossible to evaluate the

propriety of the granting of the waivers in the absence of a leachate collection system design as determined in other findings of fact by the board. In view of the reasons stated hereafter for overruling assignment of error number seven, assignment of error number six is overruled.

In support of their seventh assignment of error, appellants seem to argue that, if the board finds that the director's order is unlawful or unreasonable in any respect, the board must vacate the order in its entirety and that the board has no jurisdiction to affirm those parts of the order that it finds to be reasonable and lawful and order a modification of that part of the order that it finds to be unreasonable and unlawful. We have resolved that issue in *Citizens Committee* v. *Williams* (1977), 56 Ohio App. 2d 61 [10 O.O.3d 91], and in *Rings* v. *Nichols* (1983), 13 Ohio App. 3d 257, 262. In *Rings,* citing *Perry Township Trustees* v. *Earnhart* (Aug. 19, 1980), Franklin App. No. 80AP-16, unreported, we held that the board may affirm that part of the director's order which it finds to be reasonable and lawful and may also modify another branch of the director's order. In *Rings,* we also placed importance upon the fact that the appellants, who were in the same legal status as the appellants in this case, benefited from the modifications in the director's order. In this case, the board vacated the part of the director's order that failed to provide for an adequate leachate system and ordered the director to require Boyas to submit plans consistent with the board's specific findings with respect to the leachate system. That act of the board is in appellants' interest. We hold that the board has the authority to enter such an order, and the seventh assignment of error is overruled.

Boyas, as cross-appellant, asserts the following four assignments of error in support of his cross-appeal:

"1. The board erred in ruling that the action of the director in granting the permit was unlawful because the plans failed to provide for a leachate collection system.

"2. The board erred in concluding that state and federal permits were required for the discharge of wastes into the waters of the state and the relocation of a drainage ditch.

"3. The board erred in vacating the action of the director in granting the permit because it incorrectly found that the director had not complied with the criteria set forth in OAC § 3745-31-05.

"4. The board erred in concluding that the evidence established that the proposed landfill will violate all applicable state and federal laws."

The board received a considerable amount of testimony and evidence regarding the leachate collection system proposed by Boyas. The director may not issue a permit to install a solid waste disposal facility unless the information available to the director indicates that the facility will not prevent or interfere with the attainment or maintenance of applicable ambient water quality or air quality standards; that it will not result in a violation of any applicable laws, including the laws governing effluent standards, emission standards, and federal standards of performance; that it will employ the best available technology; and that it will not cause significant degradation of the air or water.

We have reviewed the extensive evidence upon which the board concluded that the proposed landfill will, in fact, prevent or interfere with the attainment or maintenance of ambient water quality standards, as they apply to Hemlock Creek. Boyas refers to evidence that is contrary to the board's conclusion of law, but such evidence is much more general in nature than the evidence upon which the board's finding is made. We conclude that the board's conclusion of law, which is that the plans fail to include a leachate collection system using

the best available technology, is supported by substantial, reliable and probative evidence. For example, the characteristics of the Chagrin shale constitute a significant fact in support of Boyas until the more specific observations and technical testimony are reviewed, as these indicate that the shale is permeable and that Boyas had performed permeability tests on the floor and sidewalls of the quarry and had not submitted detail plans regarding the sequency of the various pits he proposed to use.

Furthermore, the assertion of Boyas, that the board's order with respect to the leachate system in this case has the effect of issuing a regulation requiring that all solid waste disposal sites will generate leachate, and therefore they must all have a leachate removal system if plans are to be approved, is not persuasive. The board's conclusions of law are clearly confined to the facts of this case. The first assignment of error of the cross-appeal is overruled.

In support of his second assignment of error, Boyas contends that the board erred by concluding that the director should not have issued the permit until Boyas had obtained a National Pollutant Discharge Elimination System ("NPDES") permit for the discharge of water and wastes from the settling basin and that Boyas should have been required to obtain a permit pursuant to Section 402(a) of the Clean Water Act, Section 1344, Title 33, U.S. Code.

Ohio Adm. Code 3745-33-02 requires that a person who proposes to discharge any pollutant into the waters of Ohio must obtain an Ohio NPDES permit before creating such discharge. An application must be filed at least one hundred eighty days prior to the commencement of the proposed discharge. There is testimony in the record that Boyas and the director had agreed that the permit would not be issued until the nature of the discharge could be determined.

We find nothing in the statutes or in the administrative regulations requiring the agency to have issued an NPDES permit at the same time it issued the permit to install. The director's order with respect to this limited issue was reasonable and in accordance with law. The first branch of Boyas' second assignment of error is sustained.

The board concluded that the construction and operation of the landfill will be unlawful without the issuance of a permit, with respect to the alteration of the easterly stream of Hemlock Creek into a drainage ditch. The stream will be relocated to provide drainage from the landfill site. Under Section 1344, Title 33, U.S. Code, Boyas would be required to obtain a permit for the dredging of the stream if it is "navigable," as that term is defined in Section 1362(7), Title 33, U.S. Code. The stream was relocated in order to provide for the diversion of surface waters from the landfill site. Navigable waters are defined as "the waters of the United States, including the territorial seas." Under that broad definition, it would appear that the easterly stream, although it is obviously a very small stream, is a navigable water for purposes of the Clean Water Act. We further assume, because neither the director nor Boyas has argued otherwise, that the easterly stream is technically water of the United States, rather than the state of Ohio or some other political subdivision. The board's conclusion of law number eighteen is supported by substantial, reliable and probative evidence and is in accordance with law, and the second branch of Boyas' second assignment of error is overruled.

The third assignment of error of the cross-appeal is overruled. In conclusion of law number thirteen, the board found that the permit does not require compliance with the criteria described in Ohio Adm. Code 3745-31-05(A)(1), (2) and (3).

Boyas argues that the plans he sub-

mitted with his application for a permit indicate that erosion control will be produced by a dam and that the site is under the jurisdiction of the Division of Reclamation of the Department of Natural Resources and is therefore controlled to the extent required by the environmental protection laws. However, the director's order does not appear to be based upon Boyas' compliance with the mining laws of Ohio, and we are unable to find in the record before the director evidence that would contradict the evidence produced in the hearing before the board, which evidence indicates that drainage and the condition of the overburden have not been properly provided for in the permit. The order of the board is therefore supported by reliable, probative and substantial evidence, and the third assignment of error is overruled.

Ohio Adm. Code 3745-27-06(H) provides that the director shall not approve any detail plans or specifications unless he determines that the establishment or modification in operation of a solid waste disposal facility will not create a nuisance or a health hazard, will not cause water pollution, and will not violate any regulations adopted by the director under R.C. Chapter 3704. In support of his fourth assignment of error, Boyas seems to argue that the findings of fact upon which the board based its conclusion of law number seventeen are either matters that should be postponed until the facility is in operation or else are not supported by the evidence. Boyas submits that conclusion of law seventeen is based upon findings of fact numbers twenty-six, twenty-eight, twenty-nine, thirty, thirty-one, thirty-two, thirty-four, forty, forty-one, forty-two and forty-three. We have reviewed all the findings of fact and the evidence in support of the findings, and we conclude that, while Boyas may disagree with the propriety of specific findings of fact, the board's order is supported by probative and reliable evidence. It is apparent that the board found that the director's order simply left some matters, such as the second pit, drainage and erosion control in and around the secondary cover material areas, to a later time. Furthermore, the director apparently did not require sufficient test borings regarding the secondary cover material and failed to account for unacceptable materials in determining the amount of overburden materials that was available at the permit site. The requirements imposed by the board's conclusion of law and findings of fact will simply make the permit comply with the laws and regulations related to solid waste disposal facilities with much more specificity and much greater assurance to all concerned that the facility will be installed and operated in a manner that assures compliance with all applicable state and federal laws. The fourth cross-assignment of error is not well-taken and is overruled.

For the foregoing reasons, the order of the Environmental Board of Review is affirmed, except to the extent that we have sustained Boyas' second cross-assignment of error.

*Judgments affirmed, except to the extent that the second cross-assignment of error is sustained.*

STRAUSBAUGH and MCCORMAC, JJ., concur.