In the Matter of the Application of Blue Cross for Change of Rates.█

[Cite as In re Blue Cross (1974), 44 Ohio App. 2d 375.]

(No. 73AP-497—Decided August 27, 1974.)

*Mr. William J. Brown,* Attorney General, and *Mr. David N. Brown,* for Kenneth E. DeShelter, Superintendent of Insurance.

*Amerman, Burt & Jones Co.,* L. P. A., and *Mr. Charles A. Morgan, Jr.,* for Blue Cross Hospital Plan, Inc.

Strausbaugh, J. This is an appeal by the Superintendent of Insurance from an order of the Common Pleas Court reversing an order of the Superintendent denying a rate increase to Blue Cross Hospital Plan, Inc. (hereafter referred to as Blue Cross), for its direct-pay subscribers under 65 years of age.

The record indicates that Blue Cross operates in four counties—Stark, Carroll, Holmes and Tuscarawas—having a current enrollment of 250,000 subscribers representing about 50 percent of the total population of the four-county area, and contracts with nine general nonprofit hospitals in the area.

On April 28, 1972, Blue Cross filed an appeal for a rate increase involving an average percentage increase of 34.38 percent. Following a public hearing on July 5 and 6, 1972, the application was denied. On September 20, 1972, a second application was filed involving a percentage increase of 15.77 percent. A public hearing was held on December 7, 1972. By stipulation, the record of the first hearing was made a part of the record.

On January 5, 1973, the Director of Insurance made the following order from which an appeal was taken to the Franklin County Court of Common Pleas:

"Hospital Service, Inc. ('Blue Cross') has filed with the Department of Insurance an application for permission to increase the rates of its direct pay subscribers, said rate increase to be effective January 1, 1973. A public hearing was held with regard to this proposed rate increase in Canton, Ohio on December 7, 1972. The requested rate increase is denied for each and every of the following reasons.

"The officers and trustees of the corporation are, when dealing with third persons, the agents and fiduciaries of their shareholders. W. Fletcher, Private Corporations (1965 Rec. Ed.) vol. 3, Sec. 841 at 189.190; *Gray* v. *Heinze*, 144 NYS 1045 (Sup. Ct. 1913). Similarly, the officers and trustees of Blue Cross, when dealing with hospitals, must be the agents and fiduciaries of their subscribers.

"Specifically, the officers and trustees of Blue Cross must obtain for their subscribers the greatest value for their hospital care dollar. In doing so, they have the duty to control hospital costs. See *In The Matter Of The Application By Blue Cross of Central Ohio For Change Of Rates For Direct Pay Subscribers*, Case No. 72CV-09-2988 (Dec. 12, 1972), see *Thaler* v. *Stern*, 253 N. Y. S. 2d 622 (1964). Furthermore, in obtaining for subscribers the greatest value for their hospital care dollar, the officers and trustees of Blue Cross must occupy an adversary role against the hospitals on behalf of their subscribers. See *In The Matter Of The Application by Blue Cross Of Central Ohio For Change Of Rates For Direct Pay Subscribers, supra.*

"Canton Blue Cross has failed to act to control hos-

pital costs or to act as an adversary on behalf of its subscribers. For example, it has not conducted any studies to gather the kind of data it needs to control hospital costs. Specifically, it has not conducted any studies on the number of beds per thousand persons the Canton area should have. It has not conducted any studies on the number of cobalt bombs per thousand persons the Canton area should have. It has not conducted any studies on the number of maternity beds per thousand persons the Canton area must have. It has not conducted any studies on the number of open heart units per thousand persons the Canton area should have. In fact, Blue Cross believes it has no duty to control hospital costs, and it admits that it is not acting to control them.

"As a further example of its failure to act to control hospital costs, Blue Cross admits that it does not effectively control expansion of facilities or duplication of facilities within the Canton Blue Cross area. Specifically, Blue Cross has not requested that Twin City Hospital, which has a 40% utilization rate in its pediatric units, and Union Hospital, which has a 38% utilization rate in its pediatric units, combine their pediatric units. Failure of Blue Cross even to begin to move in this area is clear evidence that Blue Cross is not vigorously representing the interests of its subscribers.

"In the face of this inaction by Blue Cross, between 1967 and 1971 hospital charges rose at almost twice the rate of medical care service prices. During that period, hospital charges rose 64% while medical care service prices rose 32%. During this same period, the consumer price index rose only 20%. In light of the fact that no evidence was introduced to show that there was during this period a corresponding increase in services, facilities and benefits made available to subscribers who use these hospitals and in light of the fact that evidence was introduced to show that Blue Cross has not acted to control hospital costs during this period, it is clear that there has been an unjustifiable rise in the per diem costs of hospital rooms to subscribers of Canton Blue Cross.

"Other evidence of the failure of Blue Cross to act on

behalf of its subscribers is abundant. While Blue Cross urges in its contract that member hospitals participate in pre-admission testing programs, no such hospitals so participate. Blue Cross has entered into a one hundred per cent cost reimbursement contract with its member hospitals, which contract Blue Cross admits lacks any substantial cost containment provisions. In fact, Blue Cross is aware that such one hundred per cent cost reimbursement formulae may well act as a spur to costs.

"All of the above reasons make it clear that this rate increase request is other than fair, lawful and reasonable. For all of the reasons and each of the reasons cited in this order, I deny the rate increase request, and I order that it not be implemented."

Upon appeal to the Franklin County Common Pleas Court on November 30, 1973, the court stated, in a well-reasoned opinion:

"At the outset, the court wishes to make clear that it is very aware of the problem of rising hospital cost and can certainly grasp the concept that the Director of Insurance points to as a major cause of that rise. Parkinson's Law (no citation available) states that work expands to fill the resources allocated to it. To coin a phrase, 'Super-Parkinson's Law' states that if resources increase in response to work expanding to fill a prior resource allocation, an upward spiral of work and resources will result. To state Super-Parkinson's Law in a technological sense, an automated system, with input determined by output, which has no negative feedback, will continually increase its output without limit. Applied to the medical field, the Director of Insurance is proceeding on the theory that unless Blue Cross sets a limit, gives negative feedback to hospitals and doctors, and puts a ceiling on resources, medical costs will continue to rise because of duplicated facilities, unnecessary equipment, testing, and treatment, excessive use of in-patient treatment, and a general lack of a resource ceiling acting as a limit on costs.

"The director's order denies the request rate increase for essentially two reasons relative to 'Super-Parkinson's Law', namely, failure to control hospital costs through ef-

ficiency, utilization or necessity-of-facilities studies and failure to control costs by adopting a position adverse to the hospitals on behalf of their subscribers. The means by which the director attempted to cause changes in Blue Cross to achieve the desired (and indeed desirable) end of reduced medical costs was through rule making by adjudication. The resolution of this appeal turns on the propriety of rule making by adjudication in this context.

"The court is of the opinion that the director's denial of the requested rate increase was contrary to law, the order of January 5, 1973, should be reversed and the application granted.

"* * *

"The order of the Director of Insurance dated January 5, 1973, denying the requested rate increase is contrary to law. That order is therefore reversed and the application of Blue Cross Hospital Plan, Inc. for a raise in rates is granted."

Without quoting the decision in its entirety, we find it to be consistent with what this court stated and held in the unreported decision rendered *In The Matter of the Application of Blue Cross of Northwest Ohio*, No. 73AP-158, Court of Appeals of Franklin County, December 28, 1973, wherein we found "no instance in the law of the state of Ohio supporting the principle of rule making by adjudication" as set forth in *Securities and Exchange Commission* v. *Chenery Corp.* (1947), 332 U. S. 194.

However admirable may be the purpose of the Director of Insurance to compel Blue Cross to control hospital and medical costs through eliminating duplicated facilities, unnecessary expenses, and overstay by inpatients in hospital facilities, we find the means attempted, that of rule making by adjudication, not permitted under Ohio law. We find no circumstance in the present case which would present an unforeseeable situation precluding the opportunity of utilizing the rule-making function by the governmental agency. What has been happening in the four-county area, encompassing Canton, concerning rising hospital costs has been happening on a nation-wide and state-wide scale; it was not an overnight happening. It is to be noted that

the contracts between Blue Cross and the hospitals had been approved by the person or persons occupying the office of Director of Insurance.

It is true that the drafting of rules and regulations that conform to the requirement of being either too broad, or too narrow, is difficult, but the advantages over rule-making by adjudication is that rules and regulations have the advantage of being prospective rather than *ex post facto*, anticipatory rather than censuring, democratic rather than despotic, and amenable to change rather than the rigidity of *stare decisis*. Persons who are governed have a right to know in advance what governmental policy and rules are *now*, and not be required to anticipate what the governing body may decide to say or do *tomorrow*.

The following testimony related to a patient billed for $448:

"Mrs. Rice: * * * He said that it was all paid, and then Mr. Jones said that the hospital bureau paid $140 of it; is that correct?

"Mr. Jones: Yes, that is substantially correct. The Blue Cross pays the hospitals their per day costs for the number of days that our Blue Cross patient stays there. * * *

"Mrs. Rice: Well, who took care of the rest?

"Mr Jones: Nobody.

"Mrs. Rice: You mean you settled a $448 bill for $140?

"Mr. Jones: That is correct.

"Mrs. Rice: Well then, carrying along that line, am I to assume that your loss of $230,000 can be figured out the same way?

"Mr. Jones: No, because the amount of the hospital bill that the patient gets has nothing to do with what Blue Cross pays. What Blue Cross pays is how we figure our losses, not what the hospital bill is.

"I think the misunderstanding—Blue Cross does not pay billed charges, they pay cost. * * *

"Mr. Brown: Isn't it true that Blue Cross will, at the end of the year, reimburse the hospital for the amount by which cost exceeds the rate for which they have been at that moment reimbursed?

"Mr. Jones: That is right.

"Mr. Brown: So, on a $421 bill, if you only pay $140, and the cost then exceeds $140, isn't it true that Blue Cross will reimburse the amount by which cost exceeds that?

"Mr. Jones: That is absolutely correct."

The July 6, 1972, testimony referred to was by the chief executive at the Twin City Hospital, as follows:

"* * * [W]e had tried to place our insurance, our employee health insurance, with others, what you would call other commercial insurance companies.

"We found that most of them would not even give us a price quote. We found out that when we did get a price quote, it was something like $5 per month per family extra. * * *

"What is the basis of this discrepancy? The basis is that the commercial insurance companies pay on the basis of bill charges. Blue Cross, in the Canton Plan, which we are a member, pays on the basis of what they consider to be reimbursable costs. The difference between these is the increment which someone has to pick up.

"It is not the Blue Cross Plans that pick this up, it is the people who have commercial insurance and who are private pay. * * *

"When we deal with Blue Cross, we do not get reimbursed anything for our bad debts. You can call this bad debts and you can call this charity. You can call this uncollectable [sic] receivables. Whatever terminology you would like to use, that is what it is.

"But, the fact remains that someone is going to have to pay approximately $150,000 or so in the bad debt factor.

"Those people who do pay are the people who come in as a private pay individual and who have commercial insurance. Commercial insurance pays its bill charges. So, they are paying for the other three areas that I mentioned. * * *"

The above testimony, which we find unrefuted, gives rise to a question concerning inequality and discrimination in the billing and payment of hospital services between Blue Cross subscribers and non-Blue Cross subscribers, although this matter is not an issue before us.

The first assignment of error states:

"The court below did not properly interpret the standard of review to be applied under Section 119.12, Ohio Revised Code. If it had, it would have affirmed the superintendent's order."

R. C. 119.12 requires the Court of Common Pleas, in reviewing an order of an agency, to determine whether such "is supported by reliable, probative and substantial evidence and is in accordance with law." A review of the record indicates that the contract between Blue Cross and the member hospitals created a fiduciary relationship between the principal and agent, restricting Blue Cross from acting "as an adversary on behalf of its subscribers," as set forth in the order of the superintendent. We further find that no legal duty imposed upon Blue Cross to act to control hospital costs or the expansion and duplication of hospital facilities. In the absence of such duty, or power, the order of the superintendent refusing to grant the proposed rate increase for those reasons is contrary to law. At the hearing for the proposed increase in rates, Blue Cross presented evidence showing that, since the last change in rates, Blue Cross had lost substantial amounts of money on its "direct pay under 65 members," which evidence was undisputed. Expert testimony by actuaries indicated the necessity of increasing rates from $12.95 to $14.70 per month for single contracts and from $27.45 to $32.15 for family contracts. The superintendent introduced no oral testimony at the hearing but did cross-examine Blue Cross representatives. The actuarial testimony of losses by Blue Cross was unrefuted. Appellant's first assignment of error is overruled.

*Judgment affirmed.*

Holmes and Whiteside, JJ., concur.