MARION OB/GYN, INC., Appellee

v.

STATE MEDICAL BOARD OF OHIO, Appellant.

[Cite as *Marion OB/GYN, Inc. v. State Med. Bd. of Ohio* (2000), 137 Ohio App.3d 522.]

Court of Appeals of Ohio, Tenth District, Franklin County.

No. 99AP–436.

Decided May 4, 2000.

524

*Bricker & Eckler, L.L.P., James F. Flynn* and *Catherine M. Ballard,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Anne Berry Strait,* Assistant Attorney Genral, for appellant.

*Vorys, Sater, Seymour & Pease, L.L.P., Alan T. Radnor* and *Philip F. Downey,* for *amicus curiae,* Ohio Association of Physician Assistants.

BOWMAN, Presiding Judge.

Appellant, Ohio State Medical Board, appeals from a judgment of the Franklin County Court of Common Pleas that reversed a decision by the board disapproving an application for approval of a supplemental physician assistant utilization plan ("supplemental plan") filed by appellee, Marion OB/GYN, Inc.

In May 1997, appellee, an obstetrics and gynecology practice in Marion, Ohio, consisted of two physicians, David Foulk, M.D., and Jaybalan Moodley, M.D., a nurse midwife, a nurse practitioner, and a physician assistant. In May 1997, Drs. Foulk and Moodley individually filed applications with the board for approval of supplemental plans. Both plans were the same and sought approval for their licensed and certified physician assistant, Sharon Roby, to perform routine, low-risk vaginal deliveries. The applications indicated that a physician assistant who operated under the supplemental plan would have completed the Midwifery Education Program of Education Program Associates in Campbell, California. This is a program that Roby had pursued from January 1996 through April 1997, and completed.

The application was initially reviewed by the board's Physician Assistant Policy Committee, which recommended to the board that it approve the plan; however, the board did not agree with this recommendation.

In October 1997, by letter, the board notified Drs. Foulk and Moodley that it did not approve their supplemental plans and proposed to deny the applications on the basis that performing routine, low-risk vaginal deliveries is beyond the scope of practice of a physician assistant. The letters also informed the doctors that they were entitled to a hearing on the matter pursuant to R.C. Chapter 119.

On December 10, 1997, a board hearing examiner conducted an evidentiary hearing on the board's proposed action. In her report and recommendation, the hearing examiner concluded that performing routine, low-risk vaginal deliveries was consistent with Roby's education and training. The hearing examiner recommended approval of the supplemental plans subject to certain limitations, including that Roby, who does not have a nursing degree, provide proof of certification as a certified midwife by the American College of Nurse Midwives ("ACNM"). In March 1998, appellee moved to submit additional evidence to the board establishing that she had been certified by ACNM.

At its March 11, 1998 meeting, the board voted to remand the matter of the supplemental plans to the hearing examiner. The purpose of the remand was to receive additional evidence on Roby's education and training to determine whether her education and training were equivalent to those of a certified nurse midwife.

In May 1998, the hearing examiner received additional evidence and issued a second report, again recommending approval of the supplemental plans with certain limitations, including that Roby maintain certification with ACNM. Although the hearing examiner did not expressly recommend that the plans be approved only as to Roby, the apparent intent of this is evident from the order.

At its August 12, 1998 meeting, the board discussed the hearing examiner's report and the applications for approval of supplemental plans. Board members addressed their concerns that the delivery of infants was beyond the proper scope of practice for physician assistants. Dr. Egner stated that Ohio currently does not certify direct-entry midwives, such as Roby. A direct-entry midwife is a person certified as a midwife who has not obtained a degree in nursing. Dr. Egner observed that the only reason appellee and Roby sought approval of the supplemental plans was that Roby could not be certified by the nursing board as a nurse midwife, as she is not a registered nurse, but she could attempt to be certified to work as a direct-entry midwife as a physician assistant. Dr. Bhati noted that, since Roby essentially seeks to be registered to practice midwifery in Ohio, the State Medical Board is not the proper board to certify her, as the board is not authorized to certify the practice of midwifery in Ohio. Dr. Bhati identified the question before the board to be whether it wanted to expand the scope of practice of a physician assistant to include midwifery.

The board voted to substitute its conclusions of law for those of the hearing examiner. The board discussed R.C. Chapter 4730, which, in addition to setting forth a specific list of procedures that all certified physician assistants may perform, provides that a supervising physician may obtain supplemental approval for a physician assistant, in a particular practice situation, to perform additional services.

Noting that the General Assembly had delegated responsibility for granting or denying approval for additional services to be performed by a physician assistant to the board and that R.C. Chapter 4730 contains no specific provision extending the scope of practice of physician assistants to performing deliveries, the board concluded that deciding whether a supplemental plan seeking authorization for a physician assistant to perform deliveries fell within its discretionary authority.

The board turned its consideration to the merits of appellee's application. Citing the significantly more extensive training and experience in dealing with complications attendant to the delivery of babies physicians receive than the training a nonnursing physician assistant such as Roby receives, the board concluded, "Ms. Roby's certification as a midwife does not rise to the level necessary to qualify her to perform the procedures requested in Marion Ob–Gyn's supplemental plan in her capacity as a physician assistant." Accordingly,

the board ordered that the supplemental physician assistant utilization plan be denied.

Appellee appealed the board's order to the Franklin County Court of Common Pleas, where it successfully obtained a decision reversing the board's order. The trial court found that the board's decision was not supported by reliable, probative, and substantial evidence; violated appellee's constitutional right to due process; and, contrary to law, constituted rule-making by adjudication. The board appeals from the trial court's order and presents the following assignments of error for review:

"1. The common pleas court erred as a matter of law by not allowing the State Medical Board to determine, under the authority granted to it by R.C. Chapter 4730, whether the procedure that Marion OB–GYN, Inc. requested that its physician assistant be allowed to perform was within the scope of practice of physician assistants.

"2. The common pleas court erred as a matter of law in holding that the State Medical Board engaged in rule-making by adjudication, contrary to R.C. Chapter 119, when it denied Marion OB–GYN's supplemental PA utilization request.

"3. The common pleas court erred as a matter of law in holding that the State Medical Board denied Marion OB–GYN's right to procedural due process under the 14th Amendment.

"4. The common pleas court erred as a matter of law by holding that a recommendation made by the State Medical Board to the Direct Entry Midwifery Council, concerning the minimum qualifications which should be met by non-nurse midwives, was an 'official position' of the Board which required the Board to allow a physician assistant to act as such a midwife."

The Ohio Association of Physician Assistants filed a brief as *amicus curiae*.

 When considering an appeal from an order of the medical board, a common pleas court must uphold the order if it is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12; *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751. This court's review of the common pleas court is limited to determining if the common pleas court abused its discretion. *Id.* Absent an abuse of discretion by the trial court, this court must affirm the trial court's judgment. *Id.* On questions of law, however, the common pleas court does not exercise discretion and the court of appeals' review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus. The Ohio Supreme Court has recognized that the General Assembly granted the medical board a broad measure of discretion. *Arlen v. State* (1980), 61 Ohio St.2d 168, 174, 15 O.O.3d

190, 194–195, 399 N.E.2d 1251, 1255. In *Farrand v. State Med. Bd.* (1949), 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114, the court stated:

"The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field."

Accordingly, when courts review a medical board order, they are obligated to accord due deference to the board's interpretation of the technical and ethical requirements of the medical profession. *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 750–751.

The board's first assignment of error addresses the trial court's finding that the determinative issue was whether Roby was qualified to perform low-risk vaginal deliveries, that the board had not considered this issue, and that the record contained reliable, probative, and substantial evidence that Roby was qualified. Thus, the common pleas court found that because the board's decision was based on its scope-of-practice determination instead of Roby's qualifications, it was not supported by reliable, probative, and substantial evidence and was not in accordance with law. The board asserts that the common pleas court erroneously identified the determinative issue in the present case.

The board contends that inherent in its authority to approve supplemental plans is the authority to make the preliminary determination that the requested procedures are or are not within the scope of practice of physician assistants. Therefore, the board argues, if, as in the present case, the board determines that the requested procedure is not within the scope of practice of physician assistants, this finding is determinative, consideration of the specific merits of the application is unnecessary, and the application will not be approved.

Appellee contends that *if* the board possesses some inherent authority to determine the scope of practice of physician assistants, it must follow the procedures for promulgating rules set forth in R.C. Chapter 119 and cannot make such determinations in the course of considering a supplemental plan, because that would constitute rule-making by adjudication, which the board cannot do. Appellee asserts that when considering a supplemental plan, the board may consider only the merits of the specific application before it, *i.e.,* whether the particular physician assistant to be employed under the supplemental plan is qualified.

Several issues must be resolved before addressing this argument. First, it must be determined whether the board's decision denying appellee's supplemental plan based on its finding that low-risk vaginal deliveries are beyond the scope of practice of physician assistants constitutes a rule for purposes of R.C. Chapter 119. Second, if the decision amounts to a rule, it must be decided whether the

board may promulgate rules by adjudication. Third, if the answer to the latter question is yes, it must be decided whether the board properly exercised this authority in the present case.

■ Because the second assignment of error concerns the board's rule-making authority, it will be addressed with the first assignment of error in the following analysis.

R.C. 119.01(C) defines "rule" as follows:

"[A]ny rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, and includes any appendix to a rule."

R.C. 119.01(D) defines "adjudication" as follows:

"[T]he determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."

The board acknowledges the import of its order to be that delivering infants is beyond the scope of practice of physician assistants, not just Roby. Thus, the board has promulgated a rule by adjudication.

In support of its holding that the board's determination of the scope of practice determination created a rule by adjudication and that this was contrary to law, the common pleas court cited *Ohio Nurses Assn., Inc. v. Ohio State Bd. of Nursing Edn. & Nurse Registration* (1989), 44 Ohio St.3d 73, 540 N.E.2d 1354, for the proposition of law that when an agency adopts a rule, it must comply with the promulgation procedures of R.C. Chapter 119. In *Ohio Nurses Assn.,* the nursing board issued a position paper that greatly expanded the authority of licensed practical nurses to administer intravenous fluids. Plaintiffs brought an action seeking declaratory and injunctive relief to prevent the board from implementing the position paper. In *Ohio Nurses Assn.,* the Supreme Court found that the paper was a rule and interpreted former R.C. 4723.05 to mandate that the nursing board follow the rule-making procedures set forth in R.C. Chapter 119 when exercising its rule-making powers. *Id.* at 75–76, 540 N.E.2d at 1355–1357. The court held that because the position paper had not been promulgated pursuant to R.C. Chapter 119, it could not be implemented.

The position paper in *Ohio Nurses Assn.* was not adopted in an adjudicatory proceeding to resolve an immediate problem before the board; thus, it does not address the issue presented in this appeal: whether the medical board may promulgate a rule by adjudication to resolve a dispute before it. *Sec. Exchange Comm. v. Chenery Corp.* (1947), 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995,

however, does address this issue. In *Chenery*, the Securities and Exchange Commission announced and applied a new standard of conduct in the course of denying an application for approval of an amendment to a utility corporation's reorganization plan. The United States Supreme Court refused to hold that because the commission had not previously formulated the general standard of conduct rule under its rule-making powers, it could not announce and apply the rule in the proceeding before it. The court recognized that although it is preferable for an administrative agency to exercise its rule-making powers by way of quasi-legislative procedures, in some situations rule-making by adjudication is necessary and proper. *Id.* at 202–203, 67 S.Ct. at 1580–1581, 91 L.Ed. at 2002–2003. The United State Supreme Court observed that not all problems can be foreseen or captured within the boundaries of a general rule and that, to be effective, an agency must have the power to deal with these types of situations on a case-by-case basis. *Id.* at 203, 67 S.Ct. at 1580–1581, 91 L.Ed. at 2002–2003.

█ The Ohio Supreme Court has followed *Chenery* in recognizing that administrative agencies must be permitted to announce and apply a new rule by adjudication. *Blue Cross v. Ratchford* (1980), 64 Ohio St.2d 256, 261–262, 18 O.O.3d 450, 453–454, 416 N.E.2d 614, 618–619; *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 151, 545 N.E.2d 1260, 1265–1266. Although these cases did not involve administrative approval of a plan, they did not so limit their agreement with *Chenery*. The Ohio Supreme Court has held that the decision to promulgate a rule by adjudication lies primarily in the informed discretion of the administrative agency, and will be upheld as long as it is reasonable. *Blue Cross*, at 262, 18 O.O.3d at 453–454, 416 N.E.2d at 619.

*In re Application of Blue Cross* (1973), 40 Ohio App.2d 285, 69 O.O.2d 266, 319 N.E.2d 212, and *In re Blue Cross* (1974), 44 Ohio App.2d 375, 73 O.O.2d 418, 338 N.E.2d 775, cases appellee cites for the proposition that Ohio does not subscribe to the principle of rule-making by adjudication as set forth in *Chenery,* were decided before the Ohio Supreme Court had determined to follow *Chenery.*

Although *Univ. Physicians Inc. v. State Med. Bd. of Ohio* (Oct. 15, 1998), Franklin C.P. No. 97CVF 12 111, unreported, supports the position that the board may not rule on scope of practice issues by adjudication, this court is not bound by it and is not persuaded by it. In the first instance, there is no indication that the court in *Univ. Physicians* considered *Chenery* and the Ohio Supreme Court cases following it. Secondly, in *Univ. Physicians,* the board had previously approved supplemental plans for the five procedures (bone marrow biopsy, bone marrow harvest, intrathecal chemotherapy administration, infusion peripheral blood progenitor cells/bone marrow cells, and lumbar puncture) at issue and, thus, was not considering the requested procedure for the first time.

Finally, Ohio Adm.Code 4731–4–04 expressly allows approval of supplemental plans for performance of lumbar punctures and bone marrow harvests, thus tacitly recognizing that these two procedures are within the scope of practice of physician assistants.

■ This court finds that the board may, in the reasonable exercise of its informed discretion, promulgate rules by adjudication. Medical knowledge and the tests and procedures to put that knowledge to practical use are rapidly expanding. Given this rate of advancement, the board may not be able to reasonably anticipate all requests to expand the services to be performed by supporting staffs, such as physician assistants and, hence, may be unable to promulgate rules to cover all future situations.

■ Thus, the remaining question is whether the board's promulgation of a rule by adjudication in the present case was a proper exercise of the board's authority. If, as appellee argues, the board lacks the authority to consider scope-of-practice questions or any question other than the merits of the specific application before it when considering supplemental plans, the board's decision in the present case is improper.

Pursuant to R.C. Chapter 4730, the General Assembly placed the board in charge of regulating the practice of physician assistants in the state of Ohio. In Ohio, physician assistants must practice under the supervision and direction of a physician. R.C. 4730.02(B). No person may practice as a physician assistant unless he or she has a valid certificate of registration. R.C. 4730.02(A). In order to act as a supervising physician of a physician assistant, the board must have approved both a physician assistant utilization plan and a supervision agreement between the physician and the physician assistant. R.C. 4730.02(C). R.C. 4730.16(B) lists the types of service a supervising physician may authorize a physician assistant to perform under a standard utilization plan. If a supervising physician wants to authorize a physician assistant to perform a procedure not listed in R.C. 4730.16(B), an application for approval of a supplemental plan must be submitted to the board. R.C. 4730.17; 4730.18.

R.C. 4730.16(B) limits the services that a certified physician assistant may perform under a standard utilization plan to the following:

"(1) Obtaining comprehensive patient histories;

"(2) Performing physical examinations, including pelvic and rectal examinations when indicated;

"(3) Assessing patients, ordering and performing routine diagnostic procedures, developing treatment plans for patients, and implementing treatment plans that have been reviewed and approved by the supervising physician;

"(4) Monitoring the effectiveness of therapeutic interventions;

"(5) Assisting in surgery in a hospital, as defined in section 3727.01 of the Revised Code, or an outpatient surgical care center affiliated with the hospital if the center meets the same credential, quality assurance, and utilization review standards as the hospital;

"(6) Providing instruction to meet patient needs;

"(7) Instituting and changing orders in patient charts as directed by the supervising physician;

."(8) Carrying out or relaying the supervising physician's orders for medication, to the extent permitted under laws pertaining to drugs."

To enable a physician assistant to perform procedures other than those outlined in R.C. 4730.16(B), R.C. 4730.18(B) provides that a supplemental plan must meet the requirements of any applicable rules adopted by the board and R.C. 4730.17 by specifying the manner in which the physician assistant's scope of practice under the supplemental plan differs from that established in a standard plan. R.C. 4730.18(B)(2) further provides that the board shall review the application, approve or disapprove the plan, and notify the applicant of its decision.

Appellee asserts that, regardless of any inherent authority of the board to make scope-of-practice decisions, the board's claim that it can make such a decision in the context of considering a supplemental plan exceeds its statutory authority. Appellee argues that the board was obligated to consider only the narrow issue of whether Roby should be permitted to perform the additional procedures. Citing the reference of R.C. 4730.17 to "the physician assistant," appellee contends that the statutes regarding standard and supplemental plans address a particular physician assistant working with a particular supervising physician.[1]

The statutory language does not support appellee's interpretation. Neither R.C. 4730.16, which identifies the information required in a standard physician assistant utilization plan, nor R.C. 4730.17, which addresses the additional information required in a supplemental utilization plan, makes any reference to data pertaining to the particular physician assistant who will practice with the supervising physician under the plan. The board's supplemental plan application

---

1. R.C. 4730.17 provides:

"A supplemental physician assistant utilization plan * * * shall specify the manner in which the physician assistant's scope of practice under the supplemental plan differs from that established by a standard plan, including the following:

"(A) Any procedures that the supervising physician may authorize the physician assistant to perform that are beyond the scope of the services authorized under a standard plan."

does not seek information, even a name, of the physician assistant who will practice. Additionally, R.C. 4730.19(C) permits changes in the parties to an approved supervision agreement to include a different physician assistant. The statute provides that if a new physician assistant is to be added to the plan and is currently certified, the board shall approve the addition. Thus, appellee's reliance on the use of the phrase "the physician assistant" in R.C. 4730.17 to support its argument that approval is to be given only to a particular physician assistant is not persuasive. Indeed, even the *amicus* interprets the statutes to provide that a supplemental plan is not specific to a particular physician assistant and that a physician with an approved supplemental plan may use any certified physician assistant under the plan.

The board argues that the statutory framework of R.C. Chapter 4730 makes no sense unless it is accepted that the General Assembly intended that the board was to exercise its discretion to determine what supplemental procedures physician assistants may properly do within their scope of practice.

■■■ This court finds the board's position persuasive. When considering whether the board has authority to determine if a proposed procedure is within the scope of practice of physician assistants, it must be borne in mind that the General Assembly has imposed upon the board the duty to safeguard the public from the ministrations of people who are not qualified by want of training, education, and experience. See *State ex rel. Copeland v. State Med. Bd.* (1923), 107 Ohio St. 20, 27, 140 N.E. 660, 662. Furthermore, the board has those implied powers that are necessary for it to perform its express powers and duties. *Id.* at 24, 140 N.E. at 661. If the board does not have the implied authority, when considering a supplemental plan, to find a procedure beyond the scope of practice of any physician assistants, their scope of practice would be unlimited, provided that a physician assistant had obtained additional training. That situation cannot have been intended by the General Assembly. Therefore, this court finds that the board has the authority to disapprove supplemental plans based on its finding the procedure to be beyond the scope of practice of physician assistants.

Thus, the final question is whether the board properly exercised its authority to base its disapproval of applications for supplemental plans on the preliminary scope-of-practice question in the present case. Appellee concedes that its application was the first to seek approval for delivering infants and that performing deliveries requires significant training and education beyond that required of a certified physician assistant. Faced with this unforeseen first-time request for supplemental authorization of a procedure calling for a great deal more skill than expected of a certified physician assistant, the board properly exercised its discretion when it ruled by adjudication that the procedure is beyond the scope of physician assistants.

For the above reasons, the trial court erred when it found that the board had not addressed the determinative issue and that the board had improperly engaged in rule-making by adjudication. The board's first and second assignments of error are sustained.

In its third assignment of error, the board asserts that the trial court erred as a matter of law when it held that the board's decision violated appellee's constitutional right to due process.

The trial court found that because the board focused on the issue of whether routine, low-risk vaginal deliveries were beyond the scope of practice of physician assistants at its final August 12, 1998 board meeting, after having remanded the matter in April for the purpose of receiving additional evidence as to Roby's education and training, the board had deprived appellee of reasonable notice and a meaningful opportunity to be heard before the board's final administrative adjudication. The trial court found that this violated appellee's constitutional right to due process.

"The fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard." *Korn v. Ohio State Med. Bd.* (1988), 61 Ohio App.3d 677, 684, 573 N.E.2d 1100, 1105. Due process requires that an individual be given an opportunity for a hearing before being deprived of a significant property interest. *Id.* The type of hearing necessary is determined by balancing the government interest against the private interest. *Id.* Typically, hearings need not be elaborate, and in an administrative action, a full evidentiary hearing is generally not required. *Id.* at 685, 573 N.E.2d at 1105–1106.

The trial court's analysis ignores the October 1997 letter of the board that unequivocally put appellee on notice of the board's serious concerns that the requested supplemental procedure was beyond the proper scope of practice of a physician assistant. Additionally, the August 1998 board minutes show that, although Roby, along with Dr. Moodley, read a statement acknowledging the board's scope-of-practice concern, both Dr. Moodley and Roby focused on Roby's qualifications and training to perform deliveries.

Appellee also argues that it was denied a meaningful opportunity to be heard when the board failed to provide witnesses or submit exhibits in support of its position that low-risk vaginal deliveries are not properly within the scope of practice of physician assistants. Although the board was obligated to give a basis for its decision, *Blue Cross*, 64 Ohio St.2d at 264, 18 O.O.3d at 455, 416 N.E.2d at 620, appellee has cited no authority for the proposition that the board must provide witnesses and exhibits to support its determination that a requested procedure is beyond a physician assistant's scope of practice.

The Ohio Supreme Court has stated that the board possesses the knowledge and expertise to determine when conduct falls below a reasonable standard of medical care. *Arlen,* 61 Ohio St.2d at 173, 15 O.O.3d at 193–194, 399 N.E.2d at 1254–1255. Thus, to require expert testimony on the standard of care in the special statutory proceeding for license revocation would usurp the broad discretion the General Assembly has bestowed upon the board. *Id.* at 174, 15 O.O.3d at 194–195, 399 N.E.2d at 1255. Likewise, approval of a request that a physician assistant perform duties other than those set forth in R.C. 4730.16(B) is a statutory proceeding conducted by a board, the majority of whose numbers possess the specialized knowledge to determine whether a procedure is properly within the scope of practice of a physician assistant. The board did not need to introduce evidence on the matter.

This court also rejects appellee's argument that the board refused to consider appellee's evidence. The August 1998 minutes indicate that the board members considered evidence of Roby's qualifications. Regardless, since the board's decision turned on the scope-of-practice issue, appellee's voluminous evidence regarding Roby's personal qualifications was not relevant to this key issue. Nor was appellee in effect deprived of a hearing pursuant to R.C. Chapter 119, because the board limited its analysis to the issue of the scope of practice for physician assistants.

Contrary to appellee's and *amicus* 's argument that the board gave no basis for its decision, this court finds that the board's discussion of whom Ohio law licenses to deliver babies establishes the board's basis for concluding that a nonnurse physician assistant, despite being certified as a midwife, is not qualified *in her capacity as a physician assistant* to perform low-risk vaginal deliveries. The considerable additional education and training beyond that of a certified physician assistant needed to become a certified nurse midwife supports the board's determination. In addition to requiring the qualifications of a registered nurse, effective January 1, 2001, the General Assembly has required that applicants to become certified nurse midwives have a master's degree. R.C. 4723.41(A) and (B). Thus, the education requirements for certified nurse midwives support the board's decision that performing deliveries is beyond the scope of practice of physician assistants.

Appellee essentially seeks state approval for Roby to work as a direct-entry midwife in appellee's practice. In light of the fact that Ohio does not license direct-entry midwifery and does not list delivering babies as a standard procedure for a physician assistant to perform, the board's determination that low-risk vaginal deliveries, *i.e.,* the practice of midwifery, was not properly within the scope of practice of a physician assistant is supported by reliable, probative, and substantial evidence.

For the above reasons, the trial court erred as a matter of law when it held that the board's decision was not supported by reliable, probative, and substantial evidence and deprived appellee of its constitutional right to due process. Appellant's third assignment of error is sustained.

In its fourth assignment of error, the board asserts that the trial court erred when it held that the board's recommendation to the Direct Entry Midwifery Study Council was the board's official position and required a finding that Roby was qualified to perform low-risk vaginal deliveries.

Included in the record of the present appeal is the final report and recommendations of the Direct Entry Midwifery Study Council. The General Assembly created this council to determine whether Ohio should recognize and regulate direct entry midwives. Am.Sub.S.B. No. 154, Section 13, 146 Ohio Laws, Part V, 9043. Under current law, R.C. 4731.41 *et. seq.*, Ohio certifies midwives only if they are nurse midwives who practice in collaboration with a physician. The report notes that the Ohio Revised Code does not expressly prohibit the practice of midwifery by persons who are not nurses, but that the legal status of such persons is unclear. Included in the report is a letter expressing the medical board's reservations about direct-entry midwives performing deliveries, and indicating that if direct-entry midwives are permitted to practice, the state should license them and require that their training and education be commensurate with that of certified nurse midwives.

The trial court cited the board's position letter in support of its conclusion that there was reliable, probative, and substantial evidence before the board that Roby was qualified to perform low-risk vaginal deliveries. In light of this court's finding that the trial court erred when it found the determinative issue to be whether Roby was qualified to perform low-risk deliveries pursuant to the supplemental plan, any error by the trial court in its interpretation of the board's position letter is moot. Furthermore, this court notes that the board's position letter is consistent with its decision that authorization by the board of a supplemental physician assistant utilization plan is not a proper means to obtain a state license to work essentially as a direct-entry midwife.

Appellant's fourth assignment of error is overruled as moot.

This decision does not reflect upon Roby's abilities as a physician assistant, a direct-entry midwife, or her dedication to her profession. Rather, it reflects the state of the law regarding the practice of midwifery in Ohio and the board's responsibilities to the public pursuant to R.C. Chapter 4730.

Appellant's first, second, and third assignments of error are sustained, and appellant's fourth assignment of error is overruled as moot. The judgment of the

Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

LAZARUS and PETREE, JJ., concur.