[Cite as *Westlake v. Majercak*, 2011-Ohio-2261.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95123

---

## CITY OF WESTLAKE

PLAINTIFF-APPELLEE

vs.

## JONATHAN MAJERCAK

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Rocky River Municipal Court
Case No. CR-09 CRB 2730

**BEFORE:** Jones, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

**ATTORNEY FOR APPELLANT**

Kenneth M. Lieux
110 Middle Avenue, 2nd Floor
Elyria, Ohio 44035


**ATTORNEY FOR APPELLEE**

Sean F. Kelleher
City Prosecutor
27300 Hilliard Boulevard
Westlake, Ohio 44145


LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Jonathan Majercak ("Majercak"), appeals his disorderly conduct-intoxication conviction. We reverse and remand.

I. Procedural History and Facts

{¶ 2} Majercak was charged in the Rocky River Municipal Court with disorderly conduct-intoxication in violation of Westlake Codified Ordinances 509.03(B)(2). A trial was held before a magistrate of the court. Plaintiff-appellee, the city of Westlake, presented a sole witness, and at the conclusion of its case, the defense made a Crim.R. 29 motion for acquittal, which was denied. The defense presented evidence, and at the conclusion of its case renewed its Crim.R. 29 motion; the motion was again denied. The magistrate found Majercak guilty.

The magistrate subsequently filed a written decision and Majercak filed objections to the decision. The trial court overruled Majercak's objections.

{¶ 3} Officer Christopher Holmes testified that in the early morning hours of December 1, 2009, he was on routine patrol in the city. While patrolling, at approximately 3:11 a.m., Holmes saw a car parked in the parking lot of the Time Warp Bar and he pulled into the lot to investigate. As he neared the vehicle, he saw that two people were in it, and he approached. Majercak was in the driver's seat and another man was in the front passenger's seat. The men were talking and smoking cigarettes. The vehicle was not running, and in fact, the keys to the vehicle were on the backseat.

{¶ 4} Holmes asked Majercak for his license and registration and Majercak complied without incident. Holmes then asked Majercak what he was doing. Majercak told the officer that he had been at the bar and consumed alcoholic beverages, and he and his friend were sitting in the car "sobering up." Officer Holmes testified that as he spoke to Majercak, he detected a "strong odor of alcoholic beverage" on his breath and "noticed that his speech at times was slurred and that he had watering glossy eyes." Holmes arrested Majercak for disorderly conduct-intoxication.

{¶ 5} Majercak testified at trial. He testified that he knew that he had had "some to drink" and that he does not drink and drive. Thus, he and his friend were sitting in his car and were either going to wait until he "sobered up" or call somebody to pick them up. Officer

Holmes arrested him, however, without allowing for any other options, such as calling someone for a ride or calling for a cab.

{¶ 6} In his two assignments of error, Majercak contends that the evidence was insufficient to support his conviction and that the conviction was against the manifest weight of the evidence. We find his sufficiency of the evidence challenge dispositive.

II. Law and Analysis

{¶ 7} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. See *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965; *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 8} Majercak was charged under Westlake Codified Ordinances 509.03(B)(2), which provides in pertinent part as follows: "[n]o person, while voluntarily intoxicated, shall engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another."[1]

---

[1]The city ordinance mirrors R.C. 2917.11(B)(2).

{¶ 9}   The issue in this case is not whether Majercak was voluntarily intoxicated; he admitted as much, and explained that that was why he was not driving.   The issue, rather, is whether Majercak was engaged in conduct or created a condition that presented a risk of physical harm to himself, another, or another's property.

{¶ 10}  R.C. 2901.01(A)(7) defines risk as a "significant possibility, as contrasted with a remote possibility, that a certain result may occur, or that certain circumstances may exist." Further, the committee comments to R.C. 2917.11(B)(2), the disorderly conduct-intoxication statute, states in pertinent part as follows:

> "Former law merely prohibited being found in a state of intoxication, whereas *this section is aimed at particular conduct rather than at the condition*. Thus, it is not a violation of this section for a person to get drunk and pass out in his own home, provided he doesn't unreasonably offend others or pose a danger to himself or another person.   It is a violation if he imbibes too much and, while in public or with others, becomes offensively noisy, coarse, or aggressive, or becomes uncontrollably nauseated between the entree and dessert.   It is also a violation if, when alone and drunk or under the influence of drugs, he attempts a tightrope act on a bridge parapet or curls up to sleep in a doorway in freezing weather."   (Emphasis added.)

{¶ 11} Officer Holmes happened upon the car while conducting routine patrol — he was not dispatched to the scene because of a complaint involving the car, Majercak, or Majercak's friend.   Majercak's car was legally parked and the keys were on the backseat. He and his friend were smoking and talking while sitting in the car to either "sober up" or call somebody to get them.   No other businesses in the area were open at the time.   There is no evidence before us that Majercak was anything but compliant and polite during his encounter with Officer Holmes.

{¶ 12} Officer Holmes testified that he believed Majercak posed a risk to himself and others because (1) it was cold outside and Majercak may have started the car to get heat, in which case he could have been charged with physical control, or he could have driven the car, in which case he could have been charged with driving while intoxicated or, (2) he could have "frozen to death."

{¶ 13} The city cites *State v. Tillman* (Sept. 30, 1993), Montgomery App. No. 14060, in support of the conviction. We find *Tillman* distinguishable from this case. In that case, at approximately 6:00 a.m., the police saw a car parked against a curb, pointed in the wrong direction, adjacent to the exit and entrance to a nursing home. Two men were asleep in the car; the defendant was in the driver's seat. Neither man moved or otherwise responded after the police shined a spotlight in the car or activated the overhead lights.

{¶ 14} The police approached the occupants, opened the car doors, and had to "shake" the defendant "pretty good" several times to awaken him. The police smelled a strong odor of alcohol in the car and saw alcohol in the car. The defendant was arrested for disorderly conduct.

{¶ 15} Although the Second Appellate District found that the "issue is close," it upheld the arrest, holding the following:

> "By being behind the wheel of an operable car, [the defendant] created a condition in which there was a significant risk that he would awaken, or be awakened by some external event, while still intoxicated, and drive the car, perhaps not even mindful of being in an intoxicated state."

{¶ 16} In this case, Majercak was not asleep and he *was* mindful of his state, hence, the reason he and his friend were sitting in the car and *not* driving. Majercak explained that to Officer Holmes, and Officer Holmes testified that he determined from his conversation with Majercak that he was *not* intending to drive home. Thus, *Tillman* is distinguishable from this case.

{¶ 17} We find the following cases cited by Majercak instructive: *State v. Graves*, 137 Ohio App.3d 526, 2007-Ohio-4904, 879 N.E.2d 239; *State v. Pennington* (Nov. 16, 1998), Stark App. No. 1998CA00137; and *State v. Parks* (1990), 56 Ohio App.3d 8, 564 N.E.2d 747.

{¶ 18} In *Graves*, the defendant was charged with disorderly conduct because he was intoxicated and standing on a sidewalk at 2:30 a.m. outside of an informant's apartment, in "chilly" weather. The Sixth Appellate District held that the arrest of the defendant was unlawful because "there was no evidence that [the defendant] was nearly asleep. Further, there was nothing of record to suggest that the temperature could put [the defendant] at risk of harm. Any harm to appellant was merely a remote possibility and not within the meaning of R.C. 2917.11(B)(2)." Id. at ¶24.

{¶ 19} Likewise, in this case, Majercak was not asleep and Officer Holmes's concern that he may have "frozen to death" was a remote possibility. Majercak was coherent enough to know that he should not have driven and he had been contemplating calling somebody to come get him and his friend.

{¶ 20} In *Pennington*, the police responded at approximately 2:30 a.m. to a "trouble call" that involved the defendant pounding on a door, refusing to leave. When the police arrived on the scene, they saw the defendant knocking on the door and called for him to come speak with them, but the defendant ran toward the rear of the house. The police commanded the defendant to stop, but he kept running. The officers caught up to him, and after a brief struggle, apprehended him. The defendant smelled of alcohol, staggered, and had slurred speech and glassy eyes. He was arrested for disorderly conduct.

{¶ 21} The state contended that the basis for the defendant's arrest was his "running through a bad neighborhood at 2:30 in the morning, thereby causing a risk of harm to himself." The Fifth Appellate District found the disorderly conduct conviction legally insufficient. Specifically, the court held:

> "We find the risk of harming oneself by running through a bad neighborhood at night pales in comparison to the examples listed in the committee comment.

> "We note [the state] offered no additional evidence as to how [the defendant] was placing himself at risk by running, other than he was running in a bad neighborhood [at 2:30 a.m.]. We find such evidence is legally insufficient to sustain a conviction under the subsection of R.C. 2917.11 charged in the case *sub judice*." (Emphasis sic.)

{¶ 22} We are mindful that *Pennington* and *Graves* involved situations where the defendants were "on foot" and not in cars, as was Majercak here. We are further mindful that the involvement of a vehicle with an intoxicated person can create a different circumstance than an intoxicated person "on foot." But Majercak realized his intoxicated state and made a conscious decision not to drive because of his state. And Officer Holmes specifically testified

that it was his understanding that Majercak was not going to drive. The car was not running, the keys were not in the ignition, and Majercak and his friend were coherent enough to know what was going on.

{¶ 23} We have also reviewed *Parks*. There, the police were involved in an early morning high-speed chase of a red corvette. Some officers found the red corvette parked in a driveway with the defendant sitting in the passenger's seat and a companion sitting in the driver's seat. Both the defendant and his companion were ordered out of the car; the defendant did not comply. The police "grabbed his right shoulder area and assisted him out of the vehicle." The defendant appeared "extremely" incoherent, had a strong odor of alcoholic beverage on his person, red bloodshot eyes, and "appeared very intoxicated." He was arrested for disorderly conduct.

{¶ 24} The Second Appellate District held that the defendant's "act of sitting in the passenger seat of a parked car, albeit in an intoxicated state, [did not] creat[e] the kind of risk of physical harm to himself that is intended to be encompassed by R.C. 2917.11(B)(2)." Id. at 11.

{¶ 25} Again, we note that a distinction exists between being in the driver's seat as opposed to the passenger's seat.[2] But we reiterate that upon review of the particular conduct of Majercak, we do not find that he posed a risk of harm to himself or others. He was aware that he was not in a position to drive and the testimony demonstrated that he did not intend to

_____

[2]Although the passenger in this case was also arrested for disorderly conduct-intoxication.

drive in that condition.    Further, Majercak was coherent enough to know what was going on around him and thus the likelihood that he would have "frozen to death" was remote.    As the Ninth Appellate District aptly noted:

"the law focuses not on the drunken state of the accused, but rather upon his actions while drunk.    Thus, once intoxicated, [the defendant] must use whatever care he possesses to act safely.    Here, [the defendant] simply climbed into his car, locked the doors and fell asleep.    It would appear that he performed the safest act available to him at the time."    *Lorain v. Wright* (1983), 11 Ohio App.3d 200, 202, 463 N.E.2d 1298.

{¶ 26} The record in this case also demonstrates that Majercak "performed the safest act available to him at the time."    On this record, the evidence was insufficient to sustain the disorderly conduct-intoxication conviction, and the first assignment of error is sustained.

Judgment reversed; case remanded with instructions to vacate the conviction.


It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


LARRY A. JONES,    JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR